544 So.2d 495 (1989)
STATE of Louisiana, Appellee,
v.
Jerry B. TYLER, Appellant.
No. 20498-KA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1989.
*497 Mullins & Gibson by Roderick Paul Gibson, Ruston, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, John C. Blake, Dist. Atty., Chris Lane Bowman, Asst. Dist. Atty., Jonesboro, for appellee.
Before HALL, MARVIN and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Defendant, Jerry B. Tyler, was charged with possession of marijuana with intent to distribute, a violation of LSA-R.S. 40:966(A)(1). After waiving jury trial, he was tried before the district judge and found guilty as charged. A sentence of three years at hard labor and a fine of $2500 were imposed, with an additional year at hard labor to be served in default of payment of fine and costs.
On appeal, defendant presents in proper form only two assignments of error. Finding them to be meritless, we affirm after amending the sentence.

FACTS
While off duty at his residence on the night of September 26, 1987, Deputy Greg Paggett of the Jackson Parish Sheriff's Office received, via telephone, information that two black males from Ruston were distributing marijuana from a two ton, orange and brown customized van at the Ebony Club in Jonesboro, Louisiana. Deputy Paggett then went to the station to meet with other officers concerning this "tip," and on his way traveled by the Ebony Club where he observed a van matching the description provided by his informant.
After briefly discussing with Deputy Paggett the information received, Deputies Wesley Horton and Travis Ables went to the Ebony shortly before midnight, but the van was gone. However, within a very few minutes, the officers spotted a van with designs painted on it and matching the older-model description they had been provided. The vehicle was being driven in an erratic manner, occasionally crossing over the center line. Turning on their squad car's top lights, the deputies forced the van to pull over. They observed that it made a "jerky" stop.
As Deputy Horton neared the driver's side of the van, he noticed someone in the back on a couch. While Deputy Ables watched this second individual, Deputy Horton approached the driver who identified himself as Jerry Tyler. Defendant's eyes were very, very red, and he seemed confused about how to respond to questions. Routine checks revealed that the vehicle was not registered in defendant's name. When Deputy Horton returned to the vehicle after his registration inquiry, he smelled what he believed to be the odor of burning marijuana, an aroma he had frequently encountered in his law enforcement work. Defendant was then advised of his rights, and consented to a search of the van. By now, Deputy Paggett and Deputy Louis Cousins had arrived on the scene to offer assistance. While Deputies Ables and Cousins observed defendant, Deputy Paggett witnessed Deputy Horton's search of the vehicle.
The van's interior was heavy with the smell of marijuana, and several seeds, believed by the deputies to be from marijuana, were observed in the carpet. Proceeding to the rear of the van, Deputy Horton roused the man who was lying on the couch. He finally identified himself as Samuel Frost, and was escorted outside to *498 wait with Ables, Cousins, and defendant. Under a cushion on which Frost had been resting his head, the deputies discovered a brown paper sack containing five bags of marijuana, a set of scales, a partially filled box of sandwich bags, and two packages of rolling papers.
Defendant and Frost were placed under arrest. A search of their persons yielded no contraband; however, $24 was taken from defendant and $150 from Frost.
At trial, Deputies Horton, Ables and Paggett were the state's only witnesses. Defendant offered no evidence on his own behalf.

I.
At the outset, we must consider whether defendant did, in fact, waive his right to a jury trial. The original record before this court did not affirmatively disclose an acceptable waiver. On February 10, 1989, after noticing this error patent, we directed the state and defendant to brief the issue and to supplement the record by designating pertinent additional minutes and transcripts.
A supplemental minute entry from February 16, 1988, now a part of the record, states that, "On motion of the counsel for the defendant, Mr. Gibson waived trial by jury and elected trial by judge only." A one page transcript of proceedings occurring on that same date was also filed, as was a brief by the state. Although not reflecting the most preferable method of waiving jury trial, the supplemental transcript, nevertheless, does contain an adequate and acceptable waiver. The transcript reveals the following colloquy:
BY MR. BLAKE,
Of Counsel for State: The next case on the jury trial docket number 25,781, State of Louisiana versus Jerry Tyler. John Blake, representing the State of Louisiana. The State announces ready.
BY THE COURT: Mr. Gibson, you're the counsel of record in this matter?
BY MR. GIBSON:
Of Counsel for Defendant: Yes, Your Honor.
BY THE COURT: Would you make an appearance, please?
BY MR. GIBSON:
Of Counsel for Defendant: Roderick Gibson, representing Mr. Jerry Tyler. We'd live [sic] to waive jury in this matter also, Your Honor.
BY THE COURT: Alright, let the waiver of Jury be noted and the matter shall be tried before a Judge alone. Mr. Tyler, you can have a seat back in the audience. We're going to pass it for now until we conclude our Jury matters.
An accused need not personally waive his right to jury trial in an exchange with the judge. A waiver by defense counsel in open court and in defendant's presence, as reflected above, is valid and sufficient. See State v. Phillips, 365 So.2d 1304 (La. 1978), cert. denied, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979). See also State v. Gillespie, 486 So.2d 984 (La.App. 2d Cir. 1986). In the present case, the defendant, through his retained counsel, specifically moved to waive jury trial.

II.
In his first assignment of error, defendant contends, in essence, that insufficient evidence was produced to support his conviction. In analyzing such a claim, the court must determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient for a rational trier of fact to conclude the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Also, the circumstantial evidence rule, contained in LSA-R.S. 15:438, provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." However, that rule does not establish a stricter standard of review than the reasonable juror's reasonable doubt formula, but, rather, provides a helpful methodology for its implementation in cases hinging on the evaluation *499 of circumstantial evidence. State v. Green, 508 So.2d 602 (La.App. 2d Cir.1987).
Two elements must be proven to support defendant's conviction, to wit: 1) possession, and 2) intent to distribute. LSA-R.S. 40:966; State v. Williams, 464 So.2d 822 (La.App. 5th Cir.1985). Also, specific, rather than general, intent to distribute must be shown. State v. Elzie, 343 So.2d 712 (La.1977). An analysis of the evidence presented illustrates that both elements of the present offense were established. Therefore, this assignment of error lacks merit.

A.
One need not actually possess the controlled dangerous substance to violate the prohibition against possession. Constructive possession is sufficient. A person may be in constructive possession of a drug even though it is not in his physical custody if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession if he willfully and knowingly shares with a companion the right to control it. State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir.1987), writ denied, 505 So.2d 1139 (La.1987).
Several factors which may be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the following: 1) defendant's knowledge that illegal drugs were in the area; 2) defendant's relationship with the person found to be in actual possession; 3) defendant's access to the area where the drugs were found; 4) evidence of recent drug use by the defendant; 5) defendant's physical proximity to the drugs; and 6) any evidence that the particular area was frequented by drug users. State v. Love, 527 So.2d 62 (La.App. 3rd Cir.1988). The present evidence revealed no illicit substances in defendant's actual possession; however, constructive possession was proven.
Testimony reflects that defendant had very, very red eyes and appeared incoherent to the officers. Also, other indicia of marijuana use were present. The van contained the odor of burning marijuana, and the experienced deputies noticed suspected marijuana seeds in the carpeting and fragments of marijuana-type vegetable matter on the floorboard. The only other person in the vehicle had in his direct possession a bulky package which contained marijuana. Clearly, then, defendant knew illegal drugs were present and, in fact, had used them.
Defendant certainly had access to the area in the rear of the vehicle where the marijuana was found. The contraband was located in the van he was driving and over which he apparently exercised dominion. Aside from Frost lying on the cushion, there is nothing to indicate that the area was not readily available to defendant. No other individuals were in the van to hinder access, and the location was in close proximity to defendant, being only a few feet from his position in the driver's seat.

B.
Factors which are useful in determining whether circumstantial evidence is sufficient to prove an intent to distribute a controlled dangerous substance include 1) whether the defendant ever distributed or attempted to distribute marijuana; 2) whether the marijuana was in a form usually associated with distribution to others; 3) whether the amount was such as to create a presumption of intent to distribute; 4) expert or other testimony that the amount found in defendant's possession was inconsistent with personal use only; and 5) presence of any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. House, 325 So.2d 222 (La.1975).
Deputy Paggett related, without objection or any limitation on the use of his testimony, that he had received a tip from an informant that two black males were distributing marijuana from a two ton, brown and orange customized van at the Ebony Club. The deputy's trip by the club on his way to the station verified that a van fitting that description was at the location he had received. While the statements *500 made to Deputy Paggett by the informant were hearsay, the lack of an objection rendered them substantive evidence to be used by the trier of fact to the extent of any probative or persuasive power they possessed. State v. Boutte, 384 So.2d 773 (La.1980); State v. Franklin, 520 So.2d 1047 (La.App. 3rd Cir.1987).
Deputy Horton described defendant's van as an older vehicle, orange and brown in color. Deputy Ables remembered the vehicle as "some type of customized job." Defendant, then, was apprehended with another male and in a van, all corresponding to the descriptions and facts provided by Deputy Paggett's informant. That informant had stated that, a very short time earlier that night, marijuana was being distributed from the van by its two occupants as previously mentioned. Under these circumstances, one may reasonably infer that defendant recently had distributed marijuana, especially considering all the items and conditions found in the van, together with defendant's appearance and reactions.
It was established that the marijuana, contained in five separate sandwich bags, yet all together in a larger paper sack with the other items, was in a form usually associated with distribution to others. Deputy Ables, basing his opinion on knowledge acquired during previous drug investigations, indicated that marijuana to be distributed is packaged in several individual bags, rather than one bag. Likewise, Deputy Paggett testified that marijuana possessed for personal use would normally be in one package or container. The present substance was neither in Tyler's or Frost's pockets nor in a portion of a bag or bags placed casually about the vehicle, but instead was contained in five different bags which, from observation, each contained the same amount of the substance.
Finally, drug paraphernalia, namely scales, sandwich bags and rolling papers, were recovered in the paper sack with the marijuana. Deputy Horton stated that scales of the sort discovered are used to weigh marijuana when repackaging it for distribution, a view also shared by Deputies Ables and Paggett. Similarly, all three officers essentially testified that sandwich bags provide individual packaging for quantities of marijuana which are intended for sale. The rolling papers, of course, are used to manufacture marijuana cigarettes, which Deputy Paggett stated are either sold individually or provided at no charge with another purchase.
The officers acknowledged that the various pieces of paraphernalia could each be employed for non-criminal purposes. However, any legitimate use is very implausible under the circumstances. No food was apt to be weighed on these scales found in a sack with five bags of marijuana, and no sandwiches or food was available for storage in the several sandwich bags. Indeed, the packaged marijuana (which was in the same type of bags as found in the box of bags) indicates that the paraphernalia was utilized in the illicit manner described by the deputies.
The foregoing evidence, when viewed in the light most favorable to the prosecution, is sufficient for a rational factfinder to conclude that both possession of marijuana and the intent to distribute were established. Thus, the evidence is sufficient under Jackson v. Virginia, supra, to support the conviction.

III.
In his second assignment of error, defendant complains that the sentence imposed is excessive. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that cognizance was taken of the criteria set forth in LSA-C.Cr. P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where *501 there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which must be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981).
Secondly, we must determine whether the sentence is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering, thereby violating LSA-Const. Art. 1, § 20 (1974). State v. Bonanno, 384 So.2d 355 (La.1980).
Although the trial court did not order a pre-sentence investigation, it indicated at sentencing that it had considered the facts established at trial, the nature of the offense, and LSA-C.Cr.P. Art. 894.1. The trial court found that the defendant's conduct threatened serious harm in that he possessed with the intent to distribute a substance classified by the legislature as dangerous and that defendant, age 25, should have contemplated that his acts would have caused or threatened harm. Defendant did not act under strong provocation, and the court perceived no grounds tending to justify or excuse his conduct. Defendant had a prior felony theft conviction. The sentencing judge believed that defendant's conduct was the result of circumstances likely to recur and that "the character and attitude of defendant does not indicate that he is unlikely to commit another crime." Similarly, according to the judge, defendant was not particularly likely to respond affirmatively to probationary treatment, and imprisonment would not entail excessive hardship to him. The trial court stated that defendant was in need of corrective treatment in a custodial environment and that a lesser sentence would deprecate the seriousness of the offense.
In mitigation, defendant informed the court that he was seeking employment and had some "good feelers" in the Ruston area, where he apparently lived. Also, the trial court was asked to consider defendant's continuous attempt to support his mother.
The preceding analysis of the sentencing hearing indicates that the trial judge applied the factors of LSA-C.Cr.P. Art. 894.1, although a factual basis was not provided for some of the considerations taken into account in imposing sentence. However, it is not necessary for an appellate court to remand for proper resentencing when the sentence imposed is not apparently severe in relation to the particular offender or the actual offense committed. State v. Mitchell, 468 So.2d 3 (La.App. 2d Cir.1985), writ denied, 469 So.2d 987 (La.1985).
The sentence imposed is not apparently severe. The sentencing judge stated that defendant had a prior criminal record in having previously been convicted of a felony, and the evidence at trial demonstrated his involvement on the present occasion in illicit drug dealing. Also, in Act 850 of 1987 the legislature established a minimum sentence of five years at hard labor for possession of marijuana with intent to distribute, effective September 1, 1987. Since defendant committed the instant crime after the effective date of the legislation, the length of his sentence is obviously not severe in relation to the actual offense committed.
Similarly, based on the considerations stated by the trial judge and because it is two years less than the statutory minimum, the sentence is not a purposeless and needless infliction of pain and suffering.[1]

IV.
Although not argued by defendant, the portion of the sentence requiring an additional year at hard labor in default of payment of the fine constitutes error, patent on the face of the record.
LSA-C.Cr.P. Art. 884 provides:

*502 If a sentence imposed includes a fine or costs, the sentence shall provide that in default of payment thereof the defendant shall be imprisoned for a specified period not to exceed one year; provided that where the maximum prison sentence which may be imposed as a penalty for a misdemeanor is six months or less, the total period of imprisonment upon conviction of the offense, including imprisonment for default in payment of a fine or costs, shall not exceed six months for that offense.
The above quoted article does not authorize default time to be served at hard labor. State v. Mims, 524 So.2d 526 (La.App. 2d Cir.1988), writ denied, 531 So.2d 267 (La. 1988). Accordingly, we amend the defendant's sentence and order that the default time be served without hard labor.

V.
In his brief, defendant raised, for the first time, an alleged error in the introduction of the laboratory report into evidence. Since the error was not formally assigned at the trial level, this court issued an order on February 23, 1989, directing defendant's attorney to formally designate, within 15 days, all errors raised in brief and not previously asserted properly.
The record discloses no response by counsel to the order, thus precluding proper review by this court. We do note, however, that the laboratory report was admitted at trial without a contemporaneous objection as required by LSA-C.Cr.P. Art. 841.

CONCLUSION
For the above stated reasons, defendant's conviction is affirmed. His primary sentence is likewise affirmed, but it is amended to delete that portion thereof which requires defendant to serve one year imprisonment at hard labor in default of payment of the $2500 fine. We hereby order that the default time be served by imprisonment without hard labor.
CONVICTION AFFIRMED, SENTENCE AMENDED AND AS AMENDED AFFIRMED.
HALL, C.J., concurs, being of the opinion that the hearsay statements of the informant to the deputy were not offered as substantive evidence of guilt and had no probative value, but the other evidence was nevertheless sufficient to prove intent to distribute.
NOTES
[1] We are unable to correct an illegally lenient sentence. State v. Fraser, 484 So.2d 122 (La. 1986).