VICTORY, Judge.
Having been convicted by unanimous jury of one count each of distribution of cocaine and possession with intent to distribute cocaine in violation of LSA-R.S. 40:967, and later adjudicated an habitual offender, defendant Dennis Ray Gene now appeals. Through counsel, defendant contends the trial court erred in refusing to grant a mistrial based on a state witness’s reference to other crimes evidence. He also contends the evidence against him was insufficient to find him guilty of possession with intent to distribute and that his sentences are excessive.
Additionally, via pro se supplemental assignments filed here, defendant contends his multiple offender adjudication was improper, his counsel was ineffective, and he is the victim of overzealous prosecution.
Finding defendant’s pro se assignments of error improper and not reviewable, and otherwise finding no reversible error, we affirm defendant’s convictions and sentences.
FACTS
On November 9, 1989, Metro Narcotics Unit (MNU) undercover officer Barbara Smith pulled into a Monroe apartment complex to buy cocaine. Observing a black male wearing a purple jogging suit nearby, Officer Smith pulled up to the curb where he was standing. When the man approached her vehicle, Officer Smith told him she wanted to buy some crack cocaine. The man, later identified as the defendant, told her he had just what she needed and proceeded to pour several rocks out of a small, brown prescription pill bottle into his hand, allowing her to select what she wanted.
After Officer Smith chose a rock, paid the defendant and received her change, she pulled a short distance up the street and gave defendant’s physical description to several MNU surveillance officers in the area. Within a minute of the transaction, MNU officers began closing in on the defendant, who was finally stopped and later arrested by officers in an apartment building breezeway.
After giving defendant his Miranda rights, the officers conducted a “safety search” of defendant’s person and found $221 cash in his pants pocket, $60 of which was marked currency. In addition, the officers found near the defendant, in the apartment corridor where defendant was *21 arrested, a $20 bill and a prescription pill bottle containing four rocks later determined to be crack cocaine.
Defendant was tried by jury and convicted by unanimous verdict on both counts and subsequently adjudicated a second felony offender. He was later sentenced to a total prison sentence of 15 years at hard labor. This appeal followed.
OTHER CRIMES EVIDENCE
In his first assignment, defendant contends the trial court erred in failing to grant his motion for mistrial after one of the state’s witnesses, Officer Smith, referred to other crimes evidence during her testimony. While cross-examining Officer Smith, defense counsel questioned her concerning the events during and immediately following the drug buy.
Attempting to determine her location and the circumstances under which she gave the arresting officers defendant’s physical description, defense counsel asked Officer Smith where the defendant was in relation to two other people standing near him. In response, Officer Smith stated there were other people close to the apartment building, but defendant was “out away from them” and “more or less doing transactions on his own.” [R 94/29-95/6] No objection was then made to the witness’s response.
Defense counsel continued questioning her, trying to learn where she was when she reported the drug buy and whether she kept defendant in view. Officer Smith responded:
When I was parked at the second X at the bottom [of the witness’s drawing], ... I could see the agents [approaching] .... When [the agents] came up, [defendant] was still standing out there. When I pulled up [to the second X, defendant] was still standing out there making transactions. Other people were coming and going. (Brackets added)
[R 97/9-19]
Immediately after the witness’s statement, defense counsel objected and moved for a mistrial. Once the jury was removed from the courtroom, the prosecutor argued the reference to other crimes came only from defense counsel and the witness’s remark was unintentional, unsolicited, and not a clear reference to other crimes. Arguing no prejudice resulted, he requested an admonition.
The trial court denied defendant’s mistrial motion. After the jury returned and without referring to the inadmissible statements, however, the trial court admonished the jury, pointing out the witness gave an “unresponsive answer to defense counsel’s question” and advised them to ignore her response which was being stricken from the record. The trial court additionally admonished Officer Smith to answer only the questions asked of her and not to volunteer or make unsolicited statements. [R 99-100]
A mistrial is a drastic remedy available only in instances where mandatory or warranted by substantial prejudice which would deny the accused a fair trial. State v. Tribbet, 415 So.2d 182 (La.1982). A mistrial is mandatory when a judge, district attorney or court official refers to inadmissible other crimes evidence in the presence of the jury. LSA-C.Cr.P. Art. 770. For the purposes of Article 770, a police officer is not a “court official.” State v. Hayes, 414 So.2d 717 (La.1982); State v. Carter, 412 So.2d 540 (La.1982); State v. Hobdy, 494 So.2d 1321 (La.App. 2d Cir.1986), writ denied, 502 So.2d 110 (La.1987).
A mistrial is discretionary when any person other than a judge, district attorney, or court official refers to inadmissible other crimes evidence in the presence of the jury. The trial court need only grant a mistrial if an admonishment would not suffice to secure the accused a fair trial. LSA-C.Cr.P. Art. 771.
Other factors which may be considered in determining whether a mistrial is warranted are whether the statement was deliberately elicited by the district attorney, whether it was responsive to the question, and whether the witness purposely uttered it to prejudice the defendant. State v. Perry, 420 So.2d 139 (La.1982), cert. den., 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); State v. Goods, 403 *22 So.2d 1205 (La.1981); State v. Henson, 351 So.2d 1169 (La.1977).
Generally, ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant. State v. Tribbet, supra; State v. Hayes, supra. The decision over whether to admonish the jury or grant a mistrial under Article 771 rests within the sound discretion of the trial court. It will not be disturbed absent a showing of manifest abuse of discretion. State v. Douglas, 389 So.2d 1263 (La.1980); State v. Goods, supra; State v. Hobdy, supra.
In the instant case, the statement was made by a police officer. Thus, a mistrial was not mandatory. Further, the district attorney did not elicit the statement. The witness made the response under cross-examination by defense counsel. When the witness’s statement was first made, no objection was made by defense counsel. She repeated her statement shortly thereafter. Even then, Officer Smith did not elaborate on her statement.[1]
Considering the circumstances presented here, the trial court properly denied defendant’s motion for mistrial. We find no prejudice to the defendant or abuse of the trial court’s discretion.
SUFFICIENCY OF EVIDENCE
Defendant next contends the evidence presented on Count 2 (possession with intent to distribute cocaine) was insufficient to show he possessed the cocaine found on the ground in the medicine bottle. He alternatively contends there was insufficient evidence to establish his intent to distribute because the medicine bottle containing crack cocaine was not found on his person and because only a small quantity of cocaine was recovered. We disagree.
The crime of possession with intent to distribute cocaine requires proof of three elements to support defendant’s conviction. The prosecutor must show beyond a reasonable doubt that (1) the defendant was (2) in possession of a controlled dangerous substance (CDS) (i.e., cocaine) (3) with specific intent to distribute same. LSA-R.S. 40:967; State v. Elzie, 343 So.2d 712 (La.1977); State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989). In assessing the sufficiency of the evidence to support a conviction, an appellate court’s review is controlled by the standard enunciated by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard requires that the reviewing court determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See e.g., State v. Rosiere, 488 So.2d 965 (La.1986).
An appellate court is required to review the evidence from the perspective of a hypothetical rational trier of fact in determining whether an unconstitutional conviction has occurred. State v. Mussall, 523 So.2d 1305 (La.1988). A criminal conviction cannot constitutionally stand if it is based on a record from which no rational trier of fact could find the defendant guilty beyond a reasonable doubt. Thus, irrational decisions to convict will be overturned and rational decisions to convict will be upheld. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee fundamental protection of due process. Jackson v. Virginia, supra.
The principal criterion of Jackson is rationality. The sufficiency of evidence, whether direct or circumstantial, is governed by the Jackson standard. In reviewing criminal convictions based on circumstantial evidence, an appellate court must *23 consider whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence has been excluded. LSA-R.S. 15:438; State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988); State v. Babineaux, 508 So.2d 606 (La.App. 2d Cir.1987); State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied, 463 So.2d 1317. This special “circumstantial evidence rule” does not, however, establish a stricter standard of review than the more general “reasonable juror” formula; it merely emphasizes the need for careful observance of the usual standard, providing a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Sutton, 436 So.2d 471 (La.1983).
Ultimately, all evidence, both direct and circumstantial, must be sufficient to satisfy the Jackson standard. State v. Jackson, 545 So.2d 1228 (La.App. 2d Cir.1989), writ denied, 550 So.2d 634. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Shapiro, 431 So.2d 372 (La.1982).
In considering the element of possession, one need not actually or physically possess a CDS to violate the statutory prohibition. A person may be in constructive possession of a drug if it is subject to his dominion or control. State v. Tyler, supra; State v. O’Neal, 501 So.2d 920 (La.App. 2d Cir.1987), writ denied, 505 So.2d 1139. Factors which may be considered in determining whether a defendant exercised dominion or control sufficient to constitute constructive possession include (1) defendant’s knowledge that illegal drugs were in the area; (2) defendant’s relationship with the person found to be in actual possession; (3) defendant’s access to the area where the drugs were found; (4) defendant’s physical proximity to the drugs; and (5) any evidence that the particular area was frequented by drug users. State v. Tyler, supra, at 499.
When the specific intent to distribute a CDS is based on circumstantial evidence, the state must prove the amount of substance and/or the manner in which it was carried was inconsistent with personal use. State v. Greenway, 422 So.2d 1146 (La.1982); State v. Green, 524 So.2d 927 (La.App. 2d Cir.1988), writ denied, 532 So.2d 129; State v. Johnson, 513 So.2d 832 (La.App. 2d Cir.1987), writ denied, 519 So.2d 124. Factors useful in determining whether the state’s circumstantial evidence is sufficient to prove intent to distribute include (1) whether the defendant ever distributed or attempted to distribute cocaine; (2) whether the drug was in a form usually associated with the distribution of cocaine; (3) whether the amount was such to create a presumption of an intent to distribute; (4) expert or other testimony that the amount found in the defendant’s actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute. State v. House, 325 So.2d 222 (La.1975); State v. Tyler, supra, at 499. These five factors are commonly referred to as the “House factors.”
The evidence presented here is sufficient to prove defendant possessed and intended to distribute cocaine. Officer Smith testified defendant, wearing a purple jogging suit, sold her crack cocaine for $50 near the Parkway Apartments. In payment, she gave him three $20 bills in recorded MNU “buy money.” After the transaction, Officer Smith informed MNU surveillance officers of the exchange and of defendant’s physical description.
Some of the MNU detectives who participated in the arrest were able to see the transaction. They closed in on defendant as soon as Officer Smith gave them defendant’s description. One officer saw defendant run into the apartment corridor and lost sight of him only momentarily. Defendant was apprehended in the corridor within one minute of his transaction with Officer Smith.
Detective James Fried and other law enforcement officers testified defendant was the only one in the area wearing a purple *24 jogging suit. When the arresting officers cornered defendant in a breezeway and arrested him, they searched him and found three $20 bills with serial numbers matching the recorded MNU “buy money” used in the drug transaction. Additionally, they discovered a small, brown prescription pill bottle containing four rocks of crack cocaine on the ground four to five feet from where defendant was stopped. No other persons were in the breezeway.
Less than one-half hour later, Officer Smith met with the surveillance team coordinator. She then positively identified the prescription pill bottle belonging to the defendant and three photos of the defendant taken shortly after his arrest. She also identified defendant as the person who sold her cocaine and confirmed the pill bottle was the same one from which he poured the rocks into his hand so Officer Smith could choose the rock she wanted.
Under these circumstances, the jury reasonably concluded defendant possessed the cocaine found near him. No other reasonable hypotheses exist.
The evidence is also sufficient to establish defendant’s intent to distribute. Our jurisprudence indicates that when evidence exists of defendant’s prior acts of distribution, the other factors need not be as strong. See e.g., State v. Robinson, 315 So.2d 268 (La.1975); State v. O’Neal, supra. In the instant case, the state established a prior transaction by the defendant. Specifically, the state proved that a man matching defendant’s description sold cocaine to Officer Smith. Following the exchange, defendant did not attempt to leave the area immediately after the transaction. Rather, he remained at Parkview Apartments, where he did not reside and which was frequently investigated for drug activity. When police moved in to arrest him, defendant fled but was apprehended.
Further, the evidence established that defendant was the only person in the area wearing a purple warm-up suit. A medicine bottle containing rocks of cocaine was found in the area near where he was stopped. That medicine bottle was identified as the same one used in the earlier transaction. Additionally, the evidence established three of the $20 bills found on the defendant matched the serial numbers of the MNU “buy money.”
The state also established through the testimony of Detective Fried, who was qualified as an expert in the packaging, use, and distribution of cocaine, that crack dealers typically carry rocks in prescription pill bottles. Defendant kept the remaining rocks in the medicine bottle, which was established as a common practice for dealers. Detective Fried's testimony further established that the crack found in rock form was in a form normally used for sale. This evidence, taken as a whole, is sufficient to establish defendant’s intent to possess and his possession with intent to distribute cocaine.
EXCESSIVENESS
Defendant next contends his sentence is excessive. He claims the trial court failed to consider any mitigating factors. Had it done so, defendant argues, he would have received the minimum sentence of ten years for distribution of cocaine under the habitual offender statute.
After being tried and unanimously convicted by jury on both counts, defendant pled guilty as charged to being a second felony offender. He was later sentenced as an habitual offender as to count 1 to 15 years at hard labor on the distribution of cocaine conviction, after his sentence was enhanced based upon defendant’s previous distribution of marijuana conviction. On Count 2, defendant was sentenced to 15 years at hard labor to be served concurrently with his other sentence and with his previous sentence following his probation revocation.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the *25 guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143.
The trial court’s compliance with 894.1 is clear. The court explained that it had considered all the factors set out in the statute, but did not see any that worked in defendant’s favor. It noted that defendant was a second felony offender and a poor probation risk. He had been convicted of distribution of marijuana in 1988 and placed on probation for three years. During his probationary period, defendant committed the instant offenses. The court found this to be an indication that defendant did not have the inclination to take advantage of the opportunity to rehabilitate and lead a law-abiding life. The court pointed out that defendant was ineligible for probation or suspended sentence because of his prior felony conviction and concluded defendant was in need of correctional treatment and lesser sentences would deprecate the seriousness of the offenses.
The court additionally considered that defendant attended school until the 12th grade, was married, and had two minor children. Further, in 1989, he was employed at J.R. Appliances in Monroe as an air-conditioner repairman. We find the trial court adequately complied with and articulated its reasons for defendant’s sentence.
Our review must also determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, supra.
The sentencing exposure for both distribution and possession with intent to distribute cocaine is from 10 to 60 years at hard labor and a fine of up to $30,000. Further, defendant was found to be an habitual offender under Count No. 1 (distribution of cocaine). This increased his sentencing exposure to a minimum of seven and one-half years at hard labor and a maximum of 60 years hard labor. Thus, defendant faced a maximum possible sentence of up to 90 years on both counts. He received two 15-year sentences ordered to be served concurrently. Additionally, the sentence imposed for his 1988 conviction for distribution of marijuana was ordered to be served concurrently with these sentences.
The 15-year concurrent sentence is one-sixth of the maximum imposable sentence and is neither harsh or excessive for a multiple felony offender who was on probation when the instant offenses were committed. In light of his prior felony record and his poor response to probationary treatment, defendant’s sentence is clearly not excessive.
REVIEWABILITY OF SUPPLEMENTAL ASSIGNMENTS OF ERROR FILED PRO SE BY REPRESENTED DEFENDANT
Additionally, defendant filed here a pro se “supplemental memorandum” speci *26 fying three additional assignments of error. By these supplemental assignments, defendant contends his multiple offender adjudication was improper, his counsel was ineffective, and that he is the victim of overzealous prosecution. For reasons hereinafter assigned, these improperly assigned errors cannot be considered on appeal.
The only matters reviewable on appeal are errors patent and those properly designated as assignments of error. LSA-C.Cr.P. Art. 920. For errors to be included in assignments of error reviewable on appeal, the requisite procedures must have been followed. LSA-C.Cr.P. Arts. 844, 916(1) and (5), and 920 and Comment (b); See also State v. Lavene, 343 So.2d 185, 187 (La.1977).
Under LSA-C.Cr.P. Arts. 844 and 920, assignments of error must be filed in and within the time specified by the trial court. State v. Ramsey, 450 So.2d 660 (La.1984); State v. Cox, 369 So.2d 118, 121 (La.1979); State v. Hunt, 573 So.2d 585, 587 n. 1 (La.App. 2d Cir.1991); State v. Woods, 444 So.2d 1332, 1334 (La.App. 2d Cir.1984). A copy of the assignments of error must be forwarded to the trial judge when assignments of error are filed. The trial court has continuing jurisdiction to extend the time for filing assignments of error and to receive assignments of error after entering the order of appeal. See e.g., State v. Lavene, supra. This procedure facilitates the trial court’s preparation of per curiam comments and helps to fix the issues to be urged on appeal. LSA-C.Cr.P. Art. 844 and Comment (c); see also Ramsey, Cox, Lavene, and Woods, all supra.
Since defendant's alleged errors were not timely filed in the trial court and no extension was requested to allow him to file additional assignments as grounds for reversal, the trial judge did not have the opportunity to prepare per curiam comments. See and compare e.g., State v. Lavene, supra. Having failed to timely and properly follow appellate procedure as set forth in our Code of Criminal Procedure, defendant’s supplemental assignments are not properly before this court for consideration.
Further, we note defendant is represented by counsel. There is no indication in the record defendant sought and received approval either in the trial court or here to serve as his own co-counsel.[2] Because the defendant is represented by counsel, he is required to proceed through and is bound by the decisions of his counsel.
Although a defendant has a right to either assistance of counsel or to self-representation, a defendant has no right to be both represented and representative. U.S. Const.Amend. VI and XIV; La. Const. Art. 1, § 13; LSA-C.Cr.P. Art. 511; Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. McCabe, 420 So.2d 955, 958 (La.1982); State v. Bodley, 394 So.2d 584, 593 (La.1981) and cases therein cited; State v. Walter, 542 So.2d 586, 588-589 (La.App. 2d Cir.1989), writ denied, 546 So.2d 1222 (La.1989); State v. Booker, 444 So.2d 238, 241 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1227 (La.1984); See and compare, State v. Gooden, 490 So.2d 622, 626 (La.App. 2d Cir.1986). Accordingly, defendant is relegated to post-conviction relief to address his alleged supplemental errors.
DECREE
For the foregoing reasons, we have not considered defendant's pro se assignments of error. Finding no reversible error in *27 those assigned by his counsel, we affirm defendant’s convictions and sentences.
AFFIRMED.

. We further note the witness's statement indicating that defendant was “making transactions” and “other people were coming and going,” while arguably inadmissible, may be admissible under the final phrase of Article 404B(1). See LSA-C.E. Art. 404B. Officer Smith’s statement discloses events and conduct which constitute "an integral part” of the acts of which the defendant was charged. They are close in time, place and identity with the charged offense. Additionally, her statement may be relevant to the intent element, indicating defendant’s possession with intent to distribute. See LSA-C.E. Art. 404B(1) and related comments; see also State v. Jackson, 450 So.2d 621 (La.1984); State v. Kahey, 436 So.2d 475 (La.1983); State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Prieur, 277 So.2d 126 (La.1973).

. We specifically reserve and do not here decide the issue of whether and under what circumstances a defendant may seek to serve as "co-counsel” in the trial or in an appellate court. As to a defendant’s right to be represented or representative, see e.g., State v. Carpenter, 390 So.2d 1296 (La.1980); State v. Graves, 165 So.2d 285 (La.1964); State v. Thompson, 544 So.2d 421 (La.App. 3d Cir.1989), writ denied, 550 So.2d 626; State v. Booker, supra; State v. Spooner, 550 So.2d 1289 (La.App. 1st Cir.1989); State v. Sepulvado, 549 So.2d 928 (La.App. 3d Cir.1989); State v. Rinefort, 544 So.2d 1281 (La.App. 4th Cir.1989); State v. Walter, supra; State v. Creamer, 528 So.2d 667 (La.App. 2d Cir.1988).