637 So.2d 656 (1994)
STATE of Louisiana, Appellee,
v.
Ervin Maurice LEE, Appellant.
No. 25917-KA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1994.
*659 Lavalle B. Salomon, Monroe, for appellant.
Richard P. Ieyoub, Atty. Gen., Jerry L. Jones, Dist. Atty., Neal G. Johnson, Asst. Dist. Atty., Monroe, for appellee.
Before VICTORY and BROWN, JJ., and PRICE, J. Pro Tem.
PRICE, Judge Pro Tem.
Ervin Lee was charged by bill of information with possession of cocaine with intent to distribute in violation of LSA-R.S. 40:967(B)(1). After a jury trial, he was convicted and sentenced to six years at hard labor. Lee appeals both his conviction and sentence making six assignments of error. For the following reasons, we affirm both the conviction and sentence.

BACKGROUND
On March 5, 1993, Sergeant David Harris and Detective William Webb were driving down Oak Street in Monroe, Louisiana, searching for Ervin Lee, the appellant. A warrant for Lee's arrest had been issued in connection with an armed robbery that had occurred several days earlier. At approximately 10:30 a.m., they passed a late model Chevrolet customized van. They recognized the van as fitting the description of the van used in the armed robbery. Detective Harris also recognized Lee as the driver of the van. They soon turned their car around and pulled the van to the side of the road.
Lee was arrested and placed in the back seat of the officers' vehicle. A passenger in the van was questioned briefly and then allowed to leave. Lee told the two police officers that he wanted the van released to his father who was the owner. The officers wanted proof of ownership of the van. Lee said the registration was in the console of the van between the passenger and driver seat. Officer Webb went to the van to examine the documents. As he reached over the passenger seat, he saw what appeared to be a pistol on the floor of the passengers' side of the van. At that point, the van was secured and a warrant was obtained to search it. The search of the van produced three guns and a medicine bottle with sixty-six pieces of crack cocaine.
Lee was charged by bill of information with armed robbery and possession of cocaine with intent to distribute. The two charges were severed and a jury trial was held on the drug charge. He was found guilty and sentenced to six years of imprisonment at hard labor. Lee appeals his conviction and his sentence, making six assignments of error.

DISCUSSION

Assignment of Error No. 1
Lee contends the police illegally detained him and his vehicle and therefore the cocaine seized from the stop is illegal. Alternatively, if the stop was legal, he argues after he had been cuffed and placed in the back of the police car, it was illegal for Officer Webb to have entered the van.

Illegal Stop
Lee argues that the detective illegally stopped and detained him. A few days before his arrest, several witnesses had identified Lee as the perpetrator of an armed robbery. An arrest warrant had been issued on the basis of these identifications. The witnesses also gave a description of the van used in the robbery. In the course of executing an arrest warrant, police officers have the right to detain the subject of the warrant. LSA-C.Cr.P. Art. 220. Thus, when Officers Harris and Webb recognized Lee, they could properly stop the van he was driving and arrest him. We therefore find this argument to be without merit.

Illegal Entry
Lee argues that Officer Webb's entry into his van was an illegal search. The Fourth and Fourteenth Amendments to the United States Constitution and Article I § 5 *660 of the Louisiana State Constitution prohibit unreasonable searches and seizures. Generally, a search conducted without a warrant is per se unconstitutional. State v. Hill, 618 So.2d 568, 569 (La.App. 2d Cir.1993). A warrantless search is unreasonable unless it can be justified by one of the exceptions to the warrant requirement. Id. The state bears the burden of proving that the search falls under one of the exceptions to the warrant requirement. Id.
The plain view doctrine renders a warrantless search reasonable (1) if the officer has a prior justification for an intrusion into a protected area, (2) in the course of which evidence is discovered inadvertently i.e. the police may not know of its location in advance, and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Neyrey, 383 So.2d 1222 (La.1979); State v. Ray, 471 So.2d 831 (La.App. 2d Cir.1985), writ denied, 475 So.2d 364 (La.1985).
In the instant case, the first element of the plain view doctrine is satisfied because Detective Webb had a prior justification for entering the van as he was verifying the ownership of the van. Generally, police officers have the right to request the vehicle registration certificate and insurance forms from motorists. State v. Desormeaux, 569 So.2d 283, 287 n. 4 (La.App. 2d Cir.1990). Officer Webb was furthering Lee's request that the van be released to the owner by verifying that Lee's father was the owner of the van.
The second element of the plain view doctrine is also satisfied because the discovery of the weapon lying on the floor of the van was inadvertent. Officer Webb testified that he saw the gun lying on the floor as he attempted to retrieve the van's registration. There is no evidence in the record indicating the police officers were intentionally engaged in a search of the vehicle or that they already knew weapons would be present in the van. Thus, the discovery of the weapon on the floor was inadvertent.
The final issue is whether the "immediately apparent" element is satisfied. In Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the United States Supreme Court modified the "immediately apparent" requirement. The court said the phrase "immediately apparent" was an "unhappy choice of words" because appellate courts were interpreting this language as requiring police officers to be nearly certain of the seizability of the items.
The court reviewed Brown and its effect on Coolidge and concluded that the third element of the plain view doctrine only required probable cause to believe that the item is evidence or contraband. State v. Camp, 459 So.2d 53, 57 (La.App. 2d Cir. 1984), writ denied, 462 So.2d 212 (La.1985). Probable cause, in circumstances where property is in plain view, is defined as a "`practical and nontechnical' probability that incriminating evidence is involved, determined by the totality of the circumstances confronting the officer." State v. Evans, 441 So.2d 82, 83 (La.App. 2d Cir.1983); State v. Hill, 618 So.2d 568, 570 (La.App. 2d Cir. 1993).
In the instant case, Lee had been sought for an armed robbery in which a pistol had been used. Considering the totality of the circumstances surrounding the search, we find the fact that a suspect in an armed robbery had been found with a pistol in his possession created a reasonable probability that the weapon on the seat was the weapon used in the robbery. Thus, the third element of the plain view doctrine is satisfied.
Lee cites two cases in support of his contention that Officer Webb illegally searched the van. In State v. Banks, 363 So.2d 491 (La.1978), a police officer arrested the defendant-motorist and placed him in the squad car. The officer entered the defendant's car to drive it to the police department when he saw a marijuana roach on the floor. The court found the plain view doctrine could not justify the search because there was no reason for the police officer to have driven the vehicle. Id. at 493. In State v. Hernandez, 410 So.2d 1381 (La.1982), a warrantless plain view search was held invalid when the defendant *661 was arrested in his driveway and removed from his car. The car was inspected by the police while waiting for a tow truck. Two marijuana cigarettes were found on the seat of the vehicle and one on the floor board. The purported need to impound the car was found to be a sham because the car was in the defendant's driveway and was not causing any traffic problems. Id. at 1383.
Both of these cases are distinguishable from the case at bar. In Banks, the court found the police did not have a legitimate reason to drive the car to the station. In this case, the police officers had a legitimate reason to enter the vanthey were insuring that the car was released to the registered owner. In Hernandez, the court found the police did not need to enter the defendant's car. In this case, the appellant wanted the van released to the owner and Officers Webb and Harris were merely facilitating this request by verifying the ownership of the van. We find the appellant's argument to be without merit.

Assignment of Error No. 2
Appellant contends that the testimony about other crimes should not have been admitted at trial. LSA-C.E. Art. 404(B)(1) provides that evidence of other crimes
is not admissible to prove the character of a person in order to show he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Under State v. Prieur, 277 So.2d 126 (La.1973), when the state intends to offer evidence of other criminal offenses:
(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information....
(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
Under State v. Hatcher, 372 So.2d 1024 (La. 1979), in order for such evidence to be admissible:
(1) [T]here must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; State v. Prieur, 277 So.2d 126 (La.1973); see also, State v. Gaines, 340 So.2d 1294, 1298 (La.1977) (concurring opinion); McCormick on Evidence, § 190, pp. 451-52 (2d ed. 1972); (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; State v. Jackson, 352 So.2d 195 (La.1977); State v. Lee, 340 So.2d 1339, 1345 (La.1977) (concurring opinion); (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. State v. Frederick, 340 So.2d 1353 (La.1976); (4) the other crimes evidence must tend to prove a material fact genuinely at issue; State v. Ledet, 345 So.2d 474 (La.1977); (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. State v. Sutfield, 354 So.2d 1334 (La.1978); State v. Jackson, 352 So.2d 195 (La.1977).
Rulings on the admissibility of evidence will not be overturned absent an abuse of discretion. State v. Mosby, 595 So.2d 1135 (La. 1992).
Appellant argues the evidence should not have been admitted for three reasons: (1) the state failed to give adequate notice of the time, manner, and place of these other crimes, (2) the state failed to specify the specific exception under which the evidence was to be admitted, and (3) the "other crimes" evidence was too dissimilar to the charged offense to be admitted.
Appellant's first argument is without merit. The state filed an Amended Answer to a Motion for Discovery and Interrogatories. In the answer the state said it:

*662 [I]ntends to offer evidence of a prior distribution of cocaine by the Defendant to one Jacob Holland, on or about September through December 1992. The State also intends to offer evidence of two prior distributions of cocaine to one Joseph Collins on or about September through December, 1992.
This was adequate to notify the defendant of the nature of the other crimes evidence, with whom it occurred and when it occurred.
Appellant also argues that the state erred by not informing him of the specific exception they intended to rely upon. However, appellant had been charged with possession of cocaine with the intent to distribute. The other crimes evidence was testimony of another incident in which the appellant had distributed crack cocaine. It is rather obvious that the State was notifying the defendant that it would use this other crimes evidence to demonstrate the appellant's intent to distribute cocaine.
Appellant's reliance on the technical requirements of Prieur is ill placed. "The rules of Prieur were not meant to be used as additional, technical procedures sacramental to a valid conviction." State v. Banks, 307 So.2d 594, 597 (La.1975). Substantial compliance with Prieur is all that required. State v. McDermitt, 406 So.2d 195, 201 (La. 1981). We find that the State substantially complied with Prieur where the exception under which the other crimes evidence would be admitted at trial is clear.
Appellant's last argument is that the trial court erred in admitting the character evidence because it is too dissimilar to the crime with which he is charged. At the Prieur hearing, Joseph Collins testified that he witnessed Lee sell drugs for resale on two previous occasions, once to him and once to a friend. He also testified that both times they had paged Lee on a beeper to notify him of their intent to buy the drugs. Both of these occasions were in November, 1992, five months before Lee was arrested. We find no abuse of discretion in the trial court's decision to admit Collins' testimony. The transaction described by Collins is similar in method and close enough in time to the present case to provide relevant evidence of Lee's intent. We find this assignment of error to be without merit.

Assignment of Error No. 3
Appellant contends the trial court erred by allowing the state to make reference throughout the trial to his arrest pursuant to a warrant. Appellant filed a motion in limine to prevent any mention of his arrest. The trial court held that the State could mention the existence of the warrant, but not why it was issued.
In State v. Brewington, 601 So.2d 656 (La. 1992), the defendant had been charged and convicted with second degree murder. The victim had been killed with a .22 caliber rifle and an autopsy of her body revealed that she had ingested cocaine several hours prior to her death. At trial, the state had introduced evidence that an hour and a half before the victim's death, the defendant had been seen with crack cocaine and a revolver which he claimed was a .357 magnum. The defendant argued that such other crimes evidence should not have been admitted at trial. The Supreme Court held that such other crimes evidence was admissible to the extent that the state could not have accurately presented its case without it. Id. at 657.
Similarly, in the instant case, the prosecution would not have been able to accurately portray why Lee was initially arrested. Without any mention of the arrest warrant, the actions of Officers Webb and Harris would have appeared as arbitrary and capricious. This would have unduly prejudiced the state's case. We find this assignment of error to be without merit.

Assignments of Error No. 4 and 5
Appellant contends the jury verdict is contrary to the law and evidence and that the evidence presented by the state did not exclude every reasonable hypothesis of innocence. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable *663 doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
In all cases where an essential element of the crime is not proven by direct evidence, LSA-R.S. 15:438 applies. As an evidentiary rule, it restrains the fact finder in the first instance, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and then to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Shapiro, 431 So.2d 372 (La.1982).
The circumstantial evidence rule of LSA-R.S. 15:438 does not establish a stricter standard of review than the more general Jackson v. Virginia formula, but a hypothesis of innocence that is sufficiently reasonable and sufficiently strong must necessarily lead a rational fact finder to entertain a reasonable doubt about guilt. State v. Sutton, 436 So.2d 471 (La.1983). This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984).
To support a conviction for possession with intent to distribute, the state must prove (1) possession of the controlled dangerous substance and (2) intent to distribute it. LSA-R.S. 40:967(A)(1); State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989). One need not actually possess the controlled dangerous substance; constructive possession is sufficient to convict. State v. Tyler, supra. Constructive possession means having an object subject to one's dominion and control, with knowledge of its presence, even though it is not in one's physical possession. State v. Perez, 569 So.2d 609 (La.App. 2d Cir.1990), writ denied, 575 So.2d 365 (1991). Factors which may be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession are his access to the area where the drugs were found and his physical proximity to the drugs. State v. Tyler, supra.
The test for determining whether intent to distribute exists in a particular case includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create a presumption of intent to distribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as baggies. State v. House, 325 So.2d 222 (La.1975); State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La. 1993). Testimony of street value and dosage units of the drug also is relevant to the issue of intent. State v. Tornabene, 337 So.2d 214 (La.1976).
The trial testimony began with Detective Harris describing how he had arrested Lee. Harris testified that he and his partner found one handgun in plain view, slightly under the driver's seat and another to the left of the passenger seat. The first, a revolver, was loaded and the second was an 11-shot .22 semi-automatic. Harris found a vial containing what appeared to be 66 pieces of crack in a pouch in a compartment on the back of the driver's seat. A lab report verified that the drugs were crack cocaine. Harris also recovered $260 dollars in cash and a beeper from the appellant. There were no identifiable fingerprints on the vial.
Joseph Collins testified that he had "beeped" defendant in November 1992 to buy crack from him and made a $200 dollar purchase. Collins said he bought the crack for resale.
James Fried testified as an expert on the distribution, packaging, sale, and value of crack. He said dealers commonly give out their pager/beeper number to customers. He also testified that it was common for dealers to carry weapons in their vehicles, and to carry "large amounts of money" usually in ten and twenty dollar bills. He testified that the most common method used by dealers to carry their crack is to place it in a pill bottle. Fried testified that each of the 66 pieces of crack recovered from defendant had *664 a street value of $20 per piece for a total of $1,320. He also said it was common for a drug user to possess some type of smoking device and that the drug user usually keeps it close by or in a pocket. He concluded by saying the quantity of crack found in the van was not consistent with personal use.
Ronnie Anding, who had been the passenger in the van, testified that he had been arrested recently on charges stemming from "the cocaine that's the subject of this suit." He testified that he had not seen any drugs in the van that day. Anding claimed the guns the police recovered were his and he paid $10 for the pair of weapons.
Lee also took the stand. He testified that the van belonged to his father and that he had been out that morning to clean out the van. He said he did not know there was cocaine in the van. He claimed the money he was carrying was the rent he collected from the houses owned by his father. He denied knowing Collins or selling Collins any drugs. He also said his father gave him the money for the beeper so his father could contact him whenever he went out of town. He admitted having access and control of the van for several days before he was arrested.
The state called defendant's father, Ernest Johnson, as a rebuttal witness. Johnson testified that the dope wasn't his. Johnson said the appellant carried a pager so they could stay in touch, but Johnson couldn't remember when he found out that Lee had gotten the pager and he didn't know the number to be able to contact his son. He also testified that he had sent Lee to collect the rent from the houses he owned. On cross-examination, Johnson said he had used the van to transport crews into Texas and back the week before defendant's arrest.
The evidence and testimony adduced at trial is sufficient to support a finding of guilty. Appellant was the driver of the van and had access to the drugs. Anding and Lee's father both denied owning the drugs. This evidence and testimony could establish that Lee was the possessor of the drugs. The hypothesis that a work crew member left the crack is not reasonable; the drugs were worth too much to just be abandoned.
The evidence adduced at trial would also allow the trier of fact to conclude beyond a reasonable doubt that Lee had the intent to distribute the drugs. Fried's testimony that the evidence found on the scene was more characteristic of a drug dealer rather than a drug user and the amount of drugs actually prove that the possessor of these drugs intended to distribute them. Collins' testimony also indicated that Lee had previously had the intent to distribute drugs. A rational trier of fact could have found that all reasonable hypotheses of innocence had been excluded and found the appellant guilty. We find these assignments of error to be without merit.

Assignments of Error No. 6 and 7
Appellant contends his sentence is excessive and disproportionate and a needless imposition of pain and suffering. Appellant also contends that the trial court erred in its sentencing as it:
(a) Did not adequately consider the mitigating circumstances presented in the pre-sentence report;
(b) Failed to articulate accurate reasons which could serve as a factual basis for the sentence imposed;
(c) Failed to consider the length of crime free years by the defendant;
(d) Failed to consider the undue hardship that the sentence will impose upon defendant and his family;
(e) Failed to adequately consider alternative and/or significantly less harsh sentences including but not limited to probation;
(f) Failed to adequately consider defendant's youth;
(g) Inappropriately considered the amount/weight of the contraband seized as a basis for the upward departure in light of the fact that the substantive offense for which defendant was convicted necessarily includes and presumes an amount inconsistent with personal use or possession.
The designated sentence range in the sentencing guidelines grid is the basis for the sentence for any offender convicted of a felony. La.S.G. § 201(A). Sentences greater *665 than the penalty within the designated sentence range should be imposed when one or more aggravating circumstances, listed in La. S.G. § 209(B), significantly differentiates the particular case from the "typical case." State v. Gibson, 628 So.2d 156, 160 (La.App. 2d Cir.1993); La.S.G. § 209(A)(3); State v. Brown, 616 So.2d 792 (La.App. 2d Cir.1993).
In order for such an aggravating circumstance to serve as a basis for an upward departure, the sentencing court must find that it is present to a degree which significantly enhances the severity of the offense. La.S.G. § 209(B). The court must specify for the record the aggravating circumstances which justifies the departure. La.Admin. code, tit. 22, § 209(A)(5) (West 1993); State v. Smith, No. 93-K-0402 at 6, 1993 WL 527405 (La. Dec. 10, 1993).
At the sentencing hearing, the court correctly noted that Lee's conviction of possession to distribute cocaine placed him within grid cell 3-G of the sentencing guidelines, twenty-four to forty-eight months. The trial court also correctly noted that this particular offense required a minimum of five years of imprisonment. Thus, the trial court was obligated to impose a sentence of five years "unless aggravating circumstances justify imposition of a more severe sentence." La.S.G. § 211. The trial court found, based on the pre-sentencing investigation and the testimony of Joseph Collins, that the appellant derived a substantial amount of income from on-going drug activity. The court then departed upward from the guidelines and sentenced the appellant to six years at hard labor.
One of the aggravating factors that can be used to depart from the sentencing guidelines is "[t]he offender was persistently involved in similar offenses not already considered as criminal history or as part of a multiple offender adjudication." La.S.G. § 209(B)(12). The record indicates that although the trial court did not specifically mention section 209(B)(12) as the aggravating circumstance it was relying upon as the basis for its upward deviation, it is clear that the trial court deviated upward because of the evidence of Lee's continued involvement in drug transactions. In the report from his pre-sentencing investigation, there were several unconfirmed statements that Lee was still involved in drug trafficking. This information was partially confirmed by the testimony of Joseph Collins, who twice saw Lee sell a substantial amount of crack cocaine. It was also confirmed by the testimony of James Fried, who stated that the presence of a beeper and the large amount of cocaine suggested that the possessor of these drugs was a drug dealer.
Ideally, the trial court should articulate the particular La.S.G. § 209(B) aggravating factor upon which it is relying on. State v. Thompson, 631 So.2d 555, 557 (La.App. 2d Cir.1994). However, the record in this case makes it quite clear that the appellant's persistent involvement in drugs was the aggravating circumstance inducing the trial court's departure from the guidelines. Thus, this contention of the appellant is without merit.
Appellant argues that he should have received a suspended sentence and probation. A suspended sentence is not mandated, simply because a defendant is a first felony offender. State v. Tolliver, 621 So.2d 17, 21 (La.App. 2d Cir.1993). A sentencing court continues to have discretion as to whether it will impose a suspended sentence unless the law provides otherwise. State v. Tolliver, supra. In this case, the report from the pre-sentencing investigation revealed that Lee had been charged with second degree murder and armed robbery. Given the serious nature of the other pending charges, we cannot say the court abused its discretion in choosing not to give Lee a suspended sentence.
Appellant's remaining contention is that his sentence was excessive and out of proportion to the severity of his offense. A sentence violates LSA-Const. Art. 1, § 20 (1974), if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355, 358 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks our sense of justice. State v. Hogan, 480 So.2d *666 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Thompson, 631 So.2d 555 (La.App. 2d Cir. 1994).
In the present case, the statutory range of punishment for possession of cocaine with intent to distribute is imprisonment at hard labor for not less than five years and not more than thirty years. LSA-R.S. 40:967(B)(1). Lee was sentenced to six years of imprisonment. Thus, the sentence was merely one year above the statutory minimum sentence.
Under the circumstances, it cannot be said that his sentence shocks our sense of justice nor can it be said that the trial court abused its discretion. We therefore find these assignments of error to be without merit.
Pursuant to LSA-C.Cr.P. Art. 920(2), we have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, Lee's conviction and sentence are affirmed.
AFFIRMED.