703 So.2d 223 (1997)
STATE of Louisiana
v.
Stephen J. EGANA.
No. 97-KA-0318.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 1997.
*225 Harry F. Connick, District Attorney, Karen Godail Arena, Assistant District Attorney, Orleans Parish, New Orleans, for Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, for Defendant/Appellant.
Before PLOTKIN, JONES and CIACCIO, JJ.
JONES, Judge.
Stephen J. Egana appeals his conviction for attempted possession of cocaine and his sentence as a multiple offender. We remand for an evidentiary hearing as to whether Egana was compelled to commence trial wearing prison garb.

*226 PROCEDURAL HISTORY

Egana was charged along with a co-defendant, Julie Norwood, with possession of cocaine. After a trial, a six member jury found him guilty of attempted possession of cocaine. The trial court sentenced him to two years at hard labor and ordered the sentence to be served under the provisions of La. R.S. 15:574.5. The State filed a multiple bill, and the trial court found Egana to be a second offender, vacated the original sentence, and then re-sentenced Egana to the same sentence. Egana appeals his conviction and sentence.

ERRORS PATENT
Our review of the record for errors patent indicates there were none.

FACTS
Officer Robert Haar testified that on June 13, 1996, at approximately 12:30 a.m., he and his partner Officer Daniel Scanlan received a call that a cream colored station wagon might be casing the area around the 500 block of Warrington Drive, near Mount Olivet Cemetery. The officers entered the cemetery and observed a cream colored station wagon parked with its lights off. The officers parked fifteen feet in front of the car and illuminated it with their high beams. Officer Haar testified that he saw the passenger, Julie Norwood, discard a shiny object out of the passenger side window. Egana, the driver, slouched down and bent forward as if he were trying to conceal something. The officers ordered both people out of the car and conducted a pat down search that produced no weapons or contraband. Officer Scanlan testified that he illuminated the interior of the car with a flashlight and saw a hole in the floorboard of the car. He reached under the car and recovered a small clear plastic bag containing two white rocks of cocaine. A search of the interior recovered two single edged razor blades, a small metal rod, and a Victoria matchbox containing used and unused matches. The items were found on the passenger side of the front bench seat.
Officer Scanlan further testified that as he approached the vehicle he saw both Ms. Norwood and Egana throw a shiny metal pipe out of their respective car windows each was sitting near. Officer Scanlan retrieved the pipe on the driver's side, which he recognized as a crack pipe. The pipe was hot to the touch. Inside the car was a "sickly sweet smoky haze."
The State introduced into evidence two crack pipes and two pieces of crack cocaine. The parties stipulated that both pipes contained cocaine residue.
Ms. Norwood took the stand for the defense and testified that the drugs and the paraphernalia belonged to her.

ASSIGNMENT OF ERROR NO. ONE:
Before trial began, the following colloquy took place on the record:
THE COURT:
You've got clothes? You've got clothes?
THE DEFENDANT:
He never told me I needed clothes.
THE COURT:
What?
THE DEFENDANT:
He never said I needed clothes.
THE COURT:
Well, you knew you were going to trial today.
THE WOMAN IN THE AUDIENCE:
No one told me to bring any clothes.
THE COURT:
No, ma'am. He's got to let you know if he goes to trial to bring his clothes. If he has clothes, I'll let him wear them. If he doesn't have clothes, I can'tI mean, there's nothing I can do if he doesn't have any clothes.
Bring the jury in, please.
(Mr. Scaccia confers with the judge. Mr. Scaccia asked the court reporter to note the defense's objection.)
Egana assigns as his first assignment of error that the trial court forced him to go to trial in prison garb over his objection. He argues that he expressed a desire to be tried in civilian clothing and told the court that his attorney did not advise him that he needed civilian clothing.
*227 The State argues that the record does not reflect precisely what Egana wore during trial. Officer Haar identified Egana as wearing a "maroon sweatshirt", while Officer Scanlan identified Egana as wearing a "purple shirt."
In his per curiam the trial court stated:
The defendant, Stephen J. Egana, was not compelled to proceed to trial in prison clothing. Stephen J. Egana, went to trial in this section of court on September 9, 1996. The policy of this court at that time, was to allow defendants to change from prison clothing to civilian clothing if civilian clothing was brought to court for them on the morning of trial. If no clothing was brought to court for a pre-trial detainee, then the court would provide the defendant with civilian clothing for his trial.
This court has no independent recollection of whether Stephen Egana went to trial in clothing provided to him from someone in the court or whether the court provided him civilian clothing, but under no circumstances would the defendant be allowed to proceed to trial in prison clothing at that time if he objected to doing so.
The per curiam appears inconsistent with the remarks of the trial court prior to the trial wherein it stated "... there is nothing I can do if he doesn't have any clothes..... Bring the jury in, please."
The argument by Egana that he was compelled to go to trial in prison garb has merit. "A jury trial commences when the first prospective juror is called for examination". LSA-C.Cr.P. art 761. Once Egana was denied the opportunity to change his attire, the defense timely objected to the trial court's ruling and preserved this matter for appeal.
In State v. Brown, 585 So.2d 1211, 1212-1213 (La.1991), the Louisiana Supreme Court reviewed the law on point:
Compelling a criminal defendant to stand trial in readily identifiable prison attire over his express objection infringes upon his presumption of innocence and denies the defendant due process of law. LSA-Const.1974, Art. I, Sec. 16; Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); State v. Spellman, 562 So.2d 455 (La.1990); State v. Brown, 368 So.2d 961 (La.1979) (on rehearing); State v. Leggett, 363 So.2d 434 (La.1978); State v. Tennant, 262 La. 941, 265 So.2d 230 (1972). The practice is "inherently prejudicial...," threatens the "fairness of the factfinding process ...," and serves "no essential state policy...." Estelle v. Williams, supra, 425 U.S. at 503-505, 96 S.Ct. at 1692-93. The failure of a defendant to make a timely objection "is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." Id. 425 U.S. at 513, 96 S.Ct. at 1697. As this Court recently emphasized in State v. Spellman, supra, however, when the defendant makes known his opposition to standing trial clad in identifiable prison attire before the jury has been impaneled, "[a] reasonable delay is appropriate to accommodate a defendant's right to be tried in his own clothes and, moreover, works no hardship on the state." Id. 562 So.2d at 456.
There is no indication from the record that Egana was not compelled to go to trial in prison grab. Further, the testimony of the officers concerning the description of Egana's clothing was offered after the case was called to trial, the jury empaneled and sworn, the bill of information read, and opening statements. The record does not indicate that the trial court afforded Egana the opportunity to change from prison garb into regular clothes prior to trial.
Considering the record before us, we are compelled to remand this matter to the trial court for a full evidentiary hearing as to whether Egana was compelled to commence trial over his objection, while wearing identifiable prison clothing.

ASSIGNMENT OF ERROR NO. TWO:
Egana argues that the State failed to present evidence sufficient to support the conviction.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational *228 trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
In order to support a conviction for possession of cocaine, the State must prove that the defendant was in possession of the cocaine and that he knowingly possessed it. State v. Chambers, 563 So.2d 579 (La. App. 4th Cir.1990). However, that possession may be constructive instead of actual possession. State v. Reaux, 539 So.2d 105 (La.App. 4th Cir.1989). A defendant is in constructive possession if he exercises dominion and control over the contraband. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Reaux, supra. The mere presence of the defendant in an area where drugs are found or the mere fact that the defendant knows the person in actual possession is insufficient to prove constructive possession. State v. Collins, 584 So.2d 356 (La.App. 4th Cir.1991). However, a person not in physical possession of the drugs may have constructive possession when the drugs are under that person's dominion and control. State v. Jackson, 557 So.2d 1034 (La.App. 4th Cir. 1990).
Several factors are considered in determining whether the appellant exercised dominion and control over the contraband so as to constitute constructive possession: 1) the defendant's knowledge that illegal drugs are in the area; 2) the defendant's access to the area where the drugs are found; and 3) the defendant's physical proximity to the drugs. State v. Collins, 584 So.2d at 360.
Egana in this case alleges the evidence was not sufficient because Norwood testified that the cocaine was hers. However, the jury chose not to believe her. Instead the jury believed the officers. Scanlan said that he saw Egana throw the crack pipe out of the window of the car. The pipe, which was found to contain cocaine residue, was hot. The car was filled with smoke. Also, the rocks of cocaine were found underneath the car, directly beneath a hole in the floorboard of the car where Egana was sitting. Accordingly, it appears that the evidence was sufficient to prove that Egana had constructive possession of the cocaine. Since the evidence was sufficient to support a conviction for possession, it was clearly sufficient to support a conviction for the lesser included offense of attempted possession.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. THREE:
At the multiple bill hearing, the trial court stated that the multiple bill alleged that *229 Egana had a prior conviction for burglary to which he pled guilty. The defense attorney stated that the defendant admitted that he was one and the same person. The court asked him if he did so admit to which he responded that he did. The court asked him whether he understood that he did not have to make the admission, that he had a right to a hearing at which the State bore the burden of proving that he was the same person, that he was giving up his right to the hearing and his right to appeal that portion of his case. The court asked whether he understood the minimum sentence was fifteen months and the maximum five years. The court asked whether he understood that he was giving up his right to confront and cross-examine witnesses, his right to compulsory process, and his right against self-incrimination. Egana responded that he understood all of the above. He said that no one had threatened, forced or intimidated him. The trial court then asked him whether he was satisfied with his attorney, and Egana responded, "Not really." He said that his lawyer "didn't tell me nothing." The court asked what other information he needed, and Egana responded, "How can they bill me? How can I get billed." The court responded that "They're claiming that you have a prior conviction within a period of ten years prior to the time that you were convicted of this drug charge." Egana responded, "Thank you. Thank you." The court then asked whether there was "anything else" to which Egana responded no. He said there was nothing more that he wanted to say. The court proceeded to sentence him.
Egana now complains that the trial court advised him of his rights before it was explained to him how he could be multiple billed. He complains that he did not understand the nature of the hearing.
R.S. 15:529.1(D) provides that the trial court shall inform the defendant of the allegations contained in the multiple bill of information and to his right to be tried as to the truth thereof according to law prior to asking the defendant whether the allegations are true. Furthermore, if a defendant pleads guilty to the multiple bill or "if he acknowledges or confesses in open court ... that he has been so convicted", the trial court must first duly caution him as to his rights.
The trial court in this case meticulously advised Egana of his rights. Although at one point Egana stated he did not understand how he could be multiple billed, once the trial court explained the situation, he indicated that he understood.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. FOUR:
Egana argues his sentence was excessive. The State argues that Egana is prevented from raising this issue because although he objected to his sentence, he did not file a motion to reconsider. Our review of the record indicates that Egana has preserved this issue for review by this Court. State v. Davis, 93-0663 (La.App. 4 Cir. 2/25/94), 633 So.2d 822, writ den., 94-2077 (La.9/20/96), 679 So.2d 422.
Article I, Section 20 of the Louisiana Constitution of 1974 provides that "[n]o law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is unconstitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the guidelines set forth in Louisiana Code of Criminal Procedure Article 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense charged. State v. Guajardo, 428 So.2d 468 (La.1983).
*230 The articulation of the factual basis for a sentence is the goal of art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). A defendant's personal history, prior criminal record, seriousness of the offense and the likelihood of rehabilitation are elements that should be considered. State v. Jones, 398 So.2d 1049 (La.1981).
The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
In this case, the trial court made absolutely no mention of La.C.Cr. P. art. 894.1 or its provisions. The trial court clearly did not comply with the article. However, since the record supports the sentence, the sentence need not be set aside.
The record reflects that the trial court ordered a pre-sentence investigation, and that the report recommended that Egana be placed in the "About Face Program" pursuant to La. R.S. 15:574.5. As a second felony offender, Egana could have received a sentence of between fifteen months and five years. La. R.S. 14:27; La. R.S. 15:529.1(A)(1); La. R.S. 40:967(C)(2). He received a sentence near the low end of the range, and was allowed to serve it pursuant to La. R.S. 15:574.5.
This assignment is without merit.
REMANDED.
CIACCIO, J., dissents.
CIACCIO, Judge, dissenting.
I respectfully dissent from the order remanding this case for an evidentiary hearing. I would affirm the defendant's conviction and sentence as I find that his assignments of error have no merit.