| McKAY, Judge.
STATEMENT OF THE CASE
Defendant Pedro N. Alvarez was charged by bill of information on September 17, 1997, with possession of four hundred grams or more of cocaine, a violation of La. R.S. 40:967(F)(c). Defendant pleaded not guilty at his October 1, 1997 arraignment. The trial court found probable cause and denied defendant’s motion to suppress the evidence on January 23, 1998. A twelve-person jury found defendant guilty as charged on January 6, 1999, following trial. On March 17, 1999, the trial court denied defendant’s motion for new trial and, after defendant waived all legal delays, sentenced him to thirty years at hard labor without benefit of parole, probation, or suspension of sentence, with credit for time served. The State charged defendant as a second-felony habitual offender. The trial court found that defendant was not a habitual offender on September 1, 1999. The trial court granted defendant’s motion for appeal.
FACTS
Jefferson Parish Sheriffs Officer Sergeant Bruce Harrison testified that he developed information that he relayed to New Orleans Police Detective Paul Toye on May 5, 1997. Sergeant Harrison was part of the surveillance team involved in | Rthe case, and he later observed the search of defendant’s truck. He identified the four bricks of cocaine that were found in the rim of the spare tire and said some documentation was recovered from the truck.
New Orleans Police Detective Michael Harrison testified that on May 5, 1997, he positioned himself near Interstate 10, near the twin-span bridge coming from Slidell. He was on the lookout for a green Dodge pickup truck, which he soon observed driving into New Orleans. He began following it and confirmed the license plate number. Defendant was the driver and sole occupant of the vehicle. Other officers stopped the vehicle, and defendant and the vehicle were taken to police headquarters. Detective Harrison was present when the truck was searched. He identified photographs of (1) a suitcase containing personal effects that was found inside of the truck, (2) another officer removing the spare tire from underneath the truck, and (3) two *878plastic-wrapiped packages of cocaine inside of the rim of the spare tire. The two plastic-wrapped packages each contained one sock-like package, and each of those contained two bricks of cocaine. Detective Harrison stated on cross-examination that he believed one used a particular tool that came with the truck to release the spare tire. He confirmed that it was “very possible” that anyone who had access to the truck would have had access to the spare tire.
New Orleans Police Detective Adam Henry began following defendant’s Dodge Ram Charger pickup truck on I 10 after it was spotted by Detective Michael Harrison. Detective Henry found the cocaine on top of the spare tire when he removed it. Detective Henry testified that the 2.1 kilograms of cocaine were valued at between $19,000 $ 22,000 per kilogram and up to $140,000 if |3adulterated and sold in street sales. During cross-examination, defense counsel essentially conceded that the truck was registered to defendant and insured by him.
New Orleans Police Detective Paul Toye testified that he applied for and obtained a search warrant for a 1996 Dodge Ram pickup truck registered to defendant. He identified approximately $1,600 in currency wrapped in rubber bands found in defendant’s billfold, approximately $1,000 in currency wrapped in rubber bands found in a suitcase located in the cab of the truck, and approximately $380 found on defendant’s person. Detective Toye observed a crime lab technician attempt, but fail, to lift fingerprints from the various layers of coverings on the bricks of cocaine — the black plastic outer covering, the socks, and the clear plastic covering each of the bricks.
New Orleans Police Criminalist William Giblin was qualified by stipulation as an expert in identifying and analyzing controlled dangerous substances. He testified at trial that he tested samples removed from each of the four bricks consisting of a white substance. The samples were positive for cocaine, and the cocaine weighed approximately two thousand ounces.
ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1

In this first assignment of error, defendant claims that the evidence was insufficient to support his conviction.
This Court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to |4support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus*879sall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
To convict for possession of a controlled dangerous substance, the State must prove that the defendant knowingly possessed it. State v. Handy, 2000-0051, p. 4 (La.App. 4 Cir. 1/24/01), 779 So.2d 103, 104; State v. Lewis, 98-2575, p. 3 (La.App. 4 Cir. 3/1/00), 755 So.2d 1025,1027. Guilty knowledge is an essential element of the offense of possession of a controlled dangerous substance. State v. Ricard, 98-2278, p. 7 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397, writ denied, 2000-0855 (La.12/8/00), 775 So.2d 1078. Knowledge need not be proven as fact, |fibut may be inferred from the circumstances. State v. Porter, 98-2280, p. 3 (La.App. 4 Cir. 5/12/99), 740 So.2d 160, 162. The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support conviction. State v. Robinson, 99-2236, p. 5 (La.App. 4 Cir. 11/29/00), 772 So.2d 966, 970. Mere presence in an area where drugs are found is insufficient to establish constructive possession. State v. Walker, 99-1957, p. 3 (La.App. 4 Cir. 5/17/00), 764 So.2d 1130, 1134. General factors to be considered in determining whether a defendant exercised dominion and control over, i.e., constructively possessed, are: the defendant’s knowledge that illegal drugs were present in the area; the defendant’s relationship with the person in actual possession; the defendant’s access to the area where the drugs were found; evidence of recent drug use; the defendant’s proximity to the drugs; and evidence that the area was being frequented by drug users. State v. Holmes, 99-0898, p. 5 (La.App. 4 Cir. 11/08/00), 791 So.2d 669; State v. Mitchell, 97-2774, p. 12 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 328.
In State v. Lee, 25,917 (La.App. 4 Cir. 5/4/94), 637 So.2d 656, police armed with a warrant for the defendant’s arrest in connection with an armed robbery saw him driving a van fitting the description of a van used in the robbery. The defendant was placed under arrest. A search of the van revealed three guns and a medicine bottle containing sixty-six pieces of crack cocaine. Defendant had a beeper on his person. The defendant was tried and convicted of possession of cocaine with intent to distribute. The defendant testified that the van belonged to his father, that he had taken it that day to clean it, and that he did not know there was cocaine inside of it. The defendant’s father testified that it was his van but that the cocaine did not belong to him. However, he stated that he had used the van to|fitransport work crews into *880Texas and back the previous week. The father testified that the defendant carried a pager so they could stay in touch. A witness testified that he “beeped” defendant some four months earlier and purchased $200 worth of crack cocaine from him. An expert witness on the distribution and value of crack cocaine testified that the most common method used by crack dealers to carry their drugs was to place it in pill bottles, that the value of cocaine was $1,320, and that dealers commonly give out their pager numbers to customers. On appeal of the sufficiency of the evidence, the court rejected as unreasonable the hypothesis that a work crew-member left the crack in the van because “the drugs were worth too much to just be abandoned.”
In State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, the Louisiana Supreme Court commented on the circumstantial evidence-reasonable hypothesis of innocence rule, stating:
On appeal, the reviewing court “does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events.” State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id. (emphasis in original).
99-3342 at p. 7, 772 So.2d at 83.
In the instant case, the defendant was charged with possession of over four hundred grams of cocaine, a violation of La. 40:967(F)(c). To support a conviction for possession of cocaine, the State must prove that the defendant was in possession of the illegal drugs and that she knowingly possessed it. State v. Lavigne, 95-0204 (La. App. 4 Cir. 5/22/96), 675 So.2d 771, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140. Additionally, the State was required to prove that 17the amount of cocaine possessed was an amount in excess of four hundred grams. The State need not prove that the defendant was in actual physical possession of the cocaine; constructive possession is sufficient to support a conviction. State v. Trahan, 425 So.2d 1222 (La.1983).
Contrary to the appellant’s assertions, the testimony 'and evidence introduced at trial is sufficient to establish that the defendant knowingly and intentionally possessed over four hundred grams of cocaine. The defendant does not allege that the State failed to prove the substance to be cocaine or that there was an amount in excess of four hundred grams. At trial, the defendant stipulated that William Gib-lin was an expert in the identification and analysis of controlled dangerous substances and that the State’s exhibits one and two, containing a total of four “bricks” of white material, were in fact cocaine with a total weight of 2089.4 grams.
To address the issue of the defendant’s knowledge and intent to possess the cocaine, the State argues that the evidence was sufficient to prove that the defendant had the requisite intent. The record establishes that the defendant was the registered owner of a 1996 green Dodge Ram truck with the license plate# S708053. He was observed driving his truck inbound entering New Orleans on the Interstate 10 (I 10), on May 5, 1997. The surveillance officers stopped the truck to execute a valid search warrant. The identification in the defendant’s wallet verified that he was Pedro Alvarez. Allstate Insurance cards found in the vehicle verified that the truck was registered to the defendant and that he carried insurance on the vehicle.
*881When officers lowered the spare tire from under the vehicle, they discovered four bricks of cocaine. Detective Adam Henry testified that the street value was ^approximately $ 120,000. The defendant owned and was in possession of the truck containing the contraband. The appellant’s suggestion that someone else would place that amount of drugs in his spare tire without his knowledge and with such a significant' street value is irrational and an unreasonable hypothesis as envisioned by State v. Lee, supra.
There is no merit to this assignment of error.

SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 1

In his first supplemental assignment of error, defendant argues that the trial court erred in denying his motion to suppress the evidence, as the application for the search warrant failed to establish probable cause to believe that there was contraband secreted in his truck.
The defendant bears the burden of proving that the evidence seized with a warrant should be suppressed. La.C.Cr.P. art. 703(D). A trial court’s ruling on a motion to suppress the evidence is entitled to great weight because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194. This court set out the law pertaining to the issuance of search warrants in State v. Martin, 97-2904 (La.App. 4 Cir. 2/24/99), 730 So.2d 1029, writ denied, 99-0874 (La.10/1/99), 747 So.2d 1136, as follows:
La.C.Cr.P. article 162 provides that a search warrant may be issued “only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for the issuance of the warrant.” The Louisiana Supreme Court has held that probable cause exists when the facts and circumstances within the affiant’s knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched. State v. Duncan, 420 So.2d 1105 (La.1982). The facts which form the basis for probable cause to issue a search warrant must be contained “within the four corners” of the affidavit. |nM A magistrate must, be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480 (La.1984), cert. denied Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The determination of probable cause involves probabilities of human behavior as understood by persons trained in law enforcement. State v. Hernandez, 513 So.2d 312 (La.App. 4 Cir.1987), writ denied, 516 So.2d 130 (La.1987).
In its review of a magistrate’s finding of probable cause, the reviewing court must determine whether the “totality of circumstances” set forth in the affidavit is sufficient to allow the magistrate to make a practical, common-sense decision whether, given all the circumr stances set forth in the affidavit before him, including the “veracity”; and “basis of knowledge” of persons supplying hearsay information, there is a reasonable probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a “substantial basis for ... concluding] that probable cause existed.” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).
97-2904 at pp. 4-5, 730 So.2d at 1031-1032.
In the search warrant affidavit officer Toye stated:
*882On, Monday, May 5, 1997, narcotics Detectives Paul Toye and Yvonne Farve, received information from Agent Bruce Harrison, of the Jefferson Parish Narcotics Division, that he had a confidential and credible informant who has provided information in the past, that resulted in the arrest and confiscation [sic] of known narcotics traffickers, and their contraband.
Agent Harrison informed Detective Toye that the informant knew of a black male subject, known to the informant as Pedro Alvarez. The informant stated that Mr. Alvarez drove to Miami Florida to purchase five (5) kilograms of cocaine, from a source in Miami that was known to both the informant and Mr. Alvarez. The informant further stated that he had first hand information, that Mr. Alvarez was in fact in Miami on May 3rd and 4th, 1997, and that Mr. Alvarez had purchased five (5) kilograms of cocaine, and was expected to return to New Orleans, Louisiana, on the 5th of May.
The informant stated that he had been in contact with Mr. Alvarez, and that he had been advised, that Mr. Alvarez would be leaving Miami, at approximately 7:00 am on the morning of May 5th, 1997, enroute back to New Orleans, Louisiana. The informant further stated that Mr. Alvarez would be traveling, in a 1996, green Dodge Ram Charger, pickup truck, bearing Louisiana license plate number S708053. The informant stated that Mr. Alvarez, would feel relatively sure of himself, due to the fact that he had a secret compartment concealed within the vehicle.
| mDetective Farve conducted a computer check of the license plate number S708053 supplied by the informant. The check revealed the license plated [sic] to be affixed to a 1996, Dodge, 6000, pickup truck, green in color,'registered to Pedro Alvarez, residing at 14003 Curran Road, with Louisiana drivers license number 2947425. Detective Farve also conducted a computer check on the aforementioned drivers license number and found it to be registered to Pedro Alvarez, black male, 04-14-53, 5' 6 inches tall, weighing 150 pounds, reside ing at 14003 Curran Road, Social Security number 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.
The informant further stated that he had first hand knowledge that Mr. Alvarez would be traveling to his residence, located at 14003 Curran Road, and that Mr. Alvarez also had numerous hiding spots within his residence, in order to conceal his contraband.
Predicated on the information from the established source, Detectives [sic] Toye along with Jefferson ,Parish Narcotics, elected to setup [sic] a surveillance of the highways from Miami Florida back to New Orleans Louisiana, in an effort to intercept Mr. Alvarez before he can secrete any narcotics into the New Orleans area. It is hereby respectfully requested, that an order of search be made issue, for one 1996, Dodge Ram Charger, pickup truck, owned and operated by Mr. Pedro Alvarez.
In the seminal case of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), probable cause to believe that drugs were in a vehicle returning to Chicago from Florida was found based on the totality of the circumstances. Someone sent an anonymous letter to police, stating that Mr. and Mrs. Gates made their living selling drugs. The letter stated that Mrs. Gates would drive from the couple’s home in. the Chicago area to Florida on May 3, leave her car to be filled up with drugs, and her husband would fly down in a few days to drive the car back. Police confirmed that Mr. Gates flew from Chicago to West Palm Beach, Florida on May 5 and *883went to a hotel room registered to his wife. He left at 7:00 a.m. the next day with an unidentified woman and began driving northbound on an interstate highway frequently used by travelers to the Chicago area. The United States Supreme Court held that based on this information, the “totality of the In circumstances,” there was probable cause to believe that the car contained drugs.
In State v. Andrews, 97-2321 (La.App. 4 Cir. 11/13/97), 703 So.2d 137, an affidavit recited that two confidential informants, one who had provided “good information” in several other stolen automobile cases, had given two separate police officers information that a “chop shop” was being operated at particular address. The affidavit further recited that officers went to the location and observed various stripped and partially stripped late model vehicles scattered throughout the yard. This court held that the information in the affidavit provided the magistrate judge with good cause to issue the search warrant.
While defendant notes that the affidavit does not recite that information from the informant had led to any convictions in the past, the affidavit does state that the informant’s information had led to arrests and confiscation of narcotics. What is at issue in the instant case is whether there was probable cause to believe that contraband, more specifically cocaine, would be found in defendant’s truck at the time of the search. Whether or not there were convictions in the prior cases is not determinative of the issue of whether or not the informant was privy to information concerning the presence of narcotics. However, defendant correctly notes that the only information given by the informant that was verified was his name, address, license plate number, and description of his- vehicle. This was information that could have been obtained by anyone who knew defendant’s name, address, and the vehicle he drove. This was a known informant, presumably someone whom the police could hold accountable for h ¿falsely reporting criminal activity.1 There was no information in the affidavit concerning the basis of the informant’s knowledge, although he said he had first-hand information from a source known to him about defendant’s supposed purchase of narcotics in Miami.
Considering the totality of the facts and circumstances set forth in the affidavit, the issuing magistrate could not have had a substantial basis for concluding that there was probable cause to believe that cocaine would be found in defendant’s vehicle at the time the search warrant was executed.
Even though the affidavit was not sufficient to establish probable cause, the evidence need not be suppressed if the officers who executed it believed it had been validly issued. U.S. v. Leon, 468 U.S. 897, 104 S.Ct. 3406, 82 L.Ed.2d 677 (1984); State v. Shortridge, 98-2060, pp. 4-6 (La. App. 4 Cir. 12/22/99), 750 So.2d 339, 341-342. However, the court cautioned , in Leon that an officer would not manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence, entirely unreasonable. 468 U.S. at 923, 104 S.Ct. at 3421. In State v. Varnado, 95-3127 (La.5/31/96), 675 So.2d 268, the court elaborated on Leon and the application of the good faith exception as follows:
*884[T]he exclusionary rule “is designed to deter police misconduct rather than to punish the errors of judges and magistrates.” Leon, 468 U.S. at 916, 104 S.Ct. at 3417. Its application therefore “must be carefully limited to the circumstances in which it will pay its way by deterring official [ lawlessness.” Id., 468 U.S. at 907 n. 6, 104 S.Ct. at 3412 n. 6 (quoting Illinois v. Gates, 462 U.S. 213, 257-58, 103 S.Ct. 2317, 2342, 76 L.Ed.2d 527 (1983)) (White, J. concurring in the judgment). As a general rule, “an officer cannot be expected to [^question the magistrate’s probable-cause determination or his judgment that the form of the warrant is technically sufficient.” Leon, 468 U.S. at 921, 104 S.Ct. at 3419. Accordingly, “suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.” Id., 468 U.S. at 918, 104 S.Ct. at 3418 (footnote omitted).
Leon’s good faith rule presupposes that the police “have a reasonable knowledge of what the law prohibits.” Id., 468 U.S. at 919 n. 20, 104 S.Ct. at 3419.
The reasonableness inquiry under Leon is an objective one, which turns on the totality of the circumstances surrounding the issuance of the warrant. Id., 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23. Those circumstances include the overall familiarity of the officer applying for the warrant with the investigation and the degree to which he has participated in the events leading to the search. See Massachusetts v. Sheppard, 468 U.S. at 989 n. 6, 104 S.Ct. at 3428 n. 6 (“In this case, Detective O’Malley, the officer who directed the search, knew what items were listed in the affidavit [he] presented to the judge.... Whether an officer who is less familiar with-the warrant application or who has unalleviated concerns about the proper scope of the search would be justified in failing to notice [the] defect ... in the warrant in this case is an issue we need not decide.”)
95-3127 at pp. 3-4, 675 So.2d at 270.
The police officers in the instant case that conducted the search pursuant to the search warrant were privy to one important fact not known to the magistrate who issued the search warrant. The informant stated that defendant would be driving into New Orleans on May 5th, and this prediction had proven correct. The confirmation of this information supported the reliability of the informant and gave veracity to his tip that defendant would be transporting a large amount of cocaine. See Alabama v. White, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (“[b]ecause only a small number of people are generally privy to an individual’s itinerary, it is reasonable for police to believe that a person with access to such information is likely also to have information about that individual’s illegal activities.”)
[ uGiven that the officers knew this important additional bit of information, it cannot be said that they acted in bad faith in executing the search warrant.
There is no merit to this assignment of error.

SUPPLEMENTAL ASSIGNMENT OP ERROR NO. 2

In this assignment of . error, the defendant claims that the trial court erred in denying his motion for a new trial on the ground that the trial court improperly coerced the jury to continue deliberating until they were able to reach a verdict.
The record contains a written Motion for new trial, dated March 17, 1999, setting forth the sole ground that the verdict was *885contrary to the law and evidence. No ground was asserted relating to the deliberative process. A minute entry from March 17, 1999, reflects that the trial court denied the motion.
The denial of a motion for new trial alleging that the verdict is contrary to the law and evidence presents nothing for appellate review. State v. Snyder, 98-1078, p. 37, n. 21 (La.4/14/99), 750 So.2d 832, 859, n. 21.
Although it is questionable that this issue is properly before this Court in light of the defendant’s failure to make a contemporaneous objection to the complained of charge, pursuant to La.C.Cr. P Arts. 801, 841, we will address the merits of this claim as we do not believe that the trial judge’s charge to the jury reached the level of an “Allen” charge.
In State v. Collor, 99-0175 (La.App. 4 Cir. 4/26/00), 762 So.2d 96, this Court addressed the “Allen” charge or “dynamite” charge.
The Allen charge originated in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed.2d 528 (1896), where the United States Supreme Court approved a charge to break a jury deadlock and accomplish jury unanimity. However, the Louisiana Supreme Court has banned the use of the Allen charge and subsequent modifications |1fiof it. State v. Nicholson, 315 So.2d 639 (La.1975). While our Supreme Court recognized the authority of the trial court to give further instructions to a jury unable to agree upon a verdict, it found the Allen charge problematic for two reasons. First, the charge emphasizes that the jury has a duty to reach a verdict, implying that the trial judge will not accept a mistrial. Second, when the duty to reach a verdict is coupled with an admonition by the trial judge that those in the minority should rethink their position, there exist an almost overwhelming pressure to confirm the majority’s view. State v. Campbell, 606 So.2d 38, 40 (La. App. 4 Cir.1992). Thus, if a trial judge gives an Allen charge or any “coercive modification” of same, the trial court will have committed reversible error. Nicholson, supra.
In the case sub judice, the trial court made the following comment.
You’ve deliberated — I think ya’ll deliberated around 7:30. And at that point in time at least I noticed that ya’ll had a problem, which was about 10-15 minutes ago. That’s about an hour and a half of deliberations, jurors, which is not, honestly, not very long to talk about the case. I understand that ya’ll probably are somewhat divided, in terms of some result in this case. But being divided or not able to come to a conclusion is not unusual at all. And, honestly, to have an expectation that you will arrive at a conclusion; that is, ten of you will agree as to some decision in this case in an hour and a half is maybe, in all honesty, an unrealistic expectation, I mean, that’s just not very long to deliberate. It really isn’t.
If there’s something that I can do, in terms of either instructing you as to the law, giving you additional instructions as to law, if there’s anything else that I can do, in terms of making deliberations comfortable, then I can do that. But maybe, jurors, ya’ll need to talk about this a little bit more before we call it an evening. So what I’m going to do is I’m going to have you go back down to the jury room, let ya’ll look at each other some more and then I’ll call ya’ll back for after a while if you can’t decide.
Clearly, the trial court did not suggest to the jurors to rethink their positions in an effort to join the majority’s opinion. *886Rather he simply suggested that they “talk about this a little more.” Considering the jury had deliberated for a mere ninety minutes before informing the judge that they were unable to arrive at a conclusion, the judge’s charge to the jury did not rise to the level of an “Allen” charge. The trial court did not abuse its discretion, and there is no merit to this assignment of error.
11 (¡Accordingly, for the aforementioned reasons the defendant’s conviction and sentence is affirmed.
AFFIRMED.

. See Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (there is a suggestion rigorous scrutiny of the basis of a known informant's knowledge is not necessary as he or she may be subject to arrest for making a false complaint if the tip is unfounded.)