985 So.2d 1259 (2008)
STATE of Louisiana
v.
Emelda JOHNSON.
No. 2007-KA-1397.
Court of Appeal of Louisiana, Fourth Circuit.
June 4, 2008.
John Harvey Craft, Louisiana Appellate Project, New Orleans, LA, for Emelda Johnson.
*1260 Keva Landrum-Johnson, District Attorney, Alyson Graugnard, Assistant District Attorney, New Orleans, LA, for Appellee.
Court composed of Judges CHARLES R. JONES, DENNIS R. BAGNERIS, SR., ROLAND L. BELSOME.
ROLAND L. BELSOME, Judge.
Defendant-Appellant, Emelda Johnson, appeals her conviction for refund or access device application fraud. For the reasons that follow, we affirm.

STATEMENT OF THE CASE AND PROCEDURAL HISTORY
Appellant was charged with fourteen counts of violating La. R.S. 14:70.2,[1] refund or access device application fraud. The charges resulted from an internal investigation at the Behrman Avenue Wal-Mart, where Appellant was employed as a cashier.
With regard to the investigation of Appellant, Jessie Rector testified that between December of 2004 and June of 2006 he was employed at the Behrman Avenue Wal-Mart in the "In Store Loss Prevention Department" and that his duties included the investigation of lost profits due to theft by shoplifters and by employees of the store. Mr. Rector further testified that as part of his job, he would routinely review the in-store surveillance video, including the video taken of each transaction at the customer service desk. The surveillance video also allowed Mr. Rector to take still photographs of transactions, which indicated the date and the time of the transaction.
Mr. Rector stated that after reviewing the transactions of several cashiers that were returning merchandise using their own discount cards, he became suspicious and began an investigation of Appellant, using a transaction analysis called "Retail Link" which identified the cashier who was using his or her own discount cards when returning merchandise by his or her operator number. Mr. Rector explained that such a transaction could be evidence of theft if no merchandise was actually returned. Mr. Rector testified that he discovered one such transaction where Appellant falsely returned merchandise she purchased for a refund, but no merchandise was actually returned, thereby issuing a fraudulent refund to herself using Wal-Mart gift cards, which could then be used as cash to purchase merchandise in the store, in conjunction with an EBT food stamp card, or an employee discount card.
Mr. Rector identified three still video photographs of Appellant dated April 8, 2005, May 5, 2005 and May 27, 2005 in which she was observed performing a merchandise return with no merchandise presented during the refund transaction. Mr. Rector explained that in the still photographs, Appellant can be seen loading the *1261 merchandise's return value to a Wal-Mart gift card. Mr. Rector further identified the three receipts that corresponded to the refund transactions in each photograph and testified that Appellant would then use the gift cards to purchase merchandise. Mr. Rector testified that each gift card had a unique sixteen-digit number assigned to it so use of the card could be tracked, and identified a document which listed a compilation of purchases made by Appellant with fraudulently loaded gift cards between January 8, 2005 and May 16, 2005. The document reflected the gift card number, Appellant's discount card number, the method in which the card was used, the dates and times that the cards were used, any other form of payment made in conjunction with the gift cards, and the amount of merchandise purchased with the gift card.
Mr. Rector testified that each transaction receipt reflected the store number, operator's number, terminal number, transaction number, items purchased, and the dollar amount spent. Mr. Rector explained that Appellant would take random receipts at the customer service desk and load the receipt amount onto a Wal-Mart gift card which she then used in the store, ultimately resulting in a theft of approximately $2,370.00. Mr. Rector stated that he could not identify the names of the customers whose receipts were used by Appellant in the scheme because only a driver's license number appeared on the receipt, and several of the driver's license numbers were different because the issuing states were not the same. After completion of his investigation, Mr. Rector turned over the information he uncovered to his supervisor, Jason Stewart.
Jason Stewart testified that on June 10, 2005, he was employed as the District Loss Prevention Supervisor for Wal-Mart Incorporated, and that his duties included investigations of both internal and external theft. Mr. Stewart stated that Mr. Rector notified him he had investigated Appellant at the Behrman Avenue store and would deliver all the information he gathered to Mr. Stewart for follow-up. Once Mr. Stewart received Mr. Rector's information, he called Appellant in for an interview, informing her that she was free to leave at any time during the interview. Mr. Stewart testified that he proceeded to question her about the results of Mr. Rector's investigation, after which Appellant admitted to using Wal-Mart gift cards that she knew were the result of fraudulent returns. Mr. Stewart further testified that Appellant agreed to give a written statement as to her involvement, and he left the room while she wrote the statement. Mr. Stewart identified the statement signed by Appellant, which was then read to the jury by the minute clerk.
Appellant was charged by bill of information with fourteen counts of refund and access device application fraud, a violation of La. R.S. 14:70.2. On June 19, 2006, Appellant was arraigned and entered a plea of not guilty on all counts. On September 13, 2006, the district court denied the motion to suppress the evidence and found probable cause to hold Appellant for trial. On April 16, 2007, Appellant was tried on one count and found guilty as charged. On July 10, 2007, Appellant was sentenced to serve four years at hard labor with all four years suspended, placed on four years active probation, and ordered to pay restitution in the amount of $2,307.49. Appellant's motion to reconsider the sentence was denied. This appeal followed.

DISCUSSION

ASSIGNMENT OF ERROR # 1
In the sole assignment of error, Appellant asserts that the evidence presented at trial was insufficient to support her conviction. Specifically, Appellant argues *1262 that although the statute is directed towards identity theft, the State failed to present any evidence that she used a false name or other identifying information, an essential element of the crimes charged, and did not charge her with that element of the crime.
This Court reiterated the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011, p. 13-14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106-107,[2] as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The factfinder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra.

In this particular case, in order to convict Appellant of refund or access device application fraud, the State had to establish that Appellant (1) with intent to defraud; (2) used a false or fictitious name or any other identifying information of any other person; (3) without the other person's permission or consent; (4) for the purpose of obtaining or attempting to obtain a refund for merchandise returned to Wal-Mart or for the purpose of obtaining or attempting to obtain an access device. See La. R.S. 14:70.2(A)(1) and (2). Subsection B of the statute defines "any other identifying information" as including, but not limited to, "an address, telephone number, social security number, account number, or any other information through which the identity of a person may be ascertained." La. R.S. 14:70.2(B)(emphasis added). Additionally, the statute defines "access device" as "any card, plate, code, account number, or other means of account access that can be used to obtain anything of value, whether contemporaneously or not." La. R.S. 14:70.2(B).
In the instant case, the State presented not only video, photographic, and other documentary evidence, but also Appellant's signed statement admitting that she used driver's license numbers obtained from receipts to falsely return merchandise, then downloaded the amounts shown on the receipts onto Wal-Mart gift cards, and used her discount card or EBT card in conjunction with the fraudulently loaded gift cards to purchase merchandise at Wal-Mart. Therefore, we find the record demonstrates that the State presented sufficient evidence to establish that Appellant used false identifying information belonging to other persons (driver's license numbers), without their permission or consent, to obtain fraudulent access devices (gift cards) which were then used to purchase approximately $2,370.00 in merchandise. *1263 Accordingly, we find that the evidence presented at trial was sufficient to support Appellant's conviction. This assignment of error lacks merit.

ERRORS PATENT
In this case, the bill of information reflects that each of the fourteen counts specifies that Appellant "without authorization and with intent to defraud, obtained an access card belonging to WALMART AND ISSUED WITHOUT THE KNOWLEDGE OR CONSENT OF WALMART FOR THE PURPOSE OF OBTAINING MERCHANDISE VALUED AT FIVE HUNDRED DOLLARS OR MORE. ...." In none of the counts is Appellant charged with the essential element of use of a false name or other identifying information. Therefore, on its face, the fourteen-count bill of information could be defective pursuant to La.C.Cr. P. art. 532.2. Appellant's remedy, however, was to file a motion to quash the bill of information before commencement of trial. La.C.Cr. P. art. 535(A)(2). Because Appellant failed to file a motion to quash prior to trial, she is precluded from raising this claim on appeal. Accordingly, Appellant is not entitled to any relief arising from this error.

CONCLUSION
For the aforementioned reasons, Appellant's conviction and sentence are hereby affirmed.
AFFIRMED
NOTES
[1] La. R.S. 14:70.2 provides as follows:

A. No person shall with the intent to defraud use a false or fictitious name or any other identifying information as his own or use the name or any other identifying information of any other person without that person's knowledge and consent for the purpose of:
(1) Obtaining or attempting to obtain a refund to a business establishment or a refund on a ticket or other document that is evidence of services purchased from a business establishment; or
(2) Obtaining or attempting to obtain an access device.
B. For purposes of this Section, "any other identifying information" shall include, but not be limited to, an address, telephone number, social security number, account number, or any other information through which the identity of a person may be ascertained. "Access device" means any card, plate, code, account number or other means of account access that can be used to obtain anything of value, whether contemporaneously or not.
[2] (quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228).