JAMES F. McKAY III, Judge.
 

 ^STATEMENT OF CASE
 

 On July 25, 2006, the State filed a bill of information charging John L. Jones and Herman Richardson with looting a residence at 1718 Laharpe Street belonging to Eleanor Cunningham, in violation of La. R.S. 14162.5(A).
 
 [1]
 
 Mr. Jones pled not guilty
 
 *61
 
 at arraignment on September 28, 2006. Hearings on defense motions were held on October 20, 2006; December 1, 2006; February 14, 2007; and March 30, 2007. The trial court found probable cause and denied the motion to suppress the evidence.
 

 On July 3, 2007, the defendant, John L. Jones, was tried by a jury and found guilty as charged. The State filed a multiple bill on July 10, 2007, alleging that he was a second felony offender having previously been convicted of aggravated assault with a firearm. On August 22, 2007, the court heard evidence on the multiple bill and found Mr. Jones to be a second felony offender. He declined the offer to have a pre-sentence investigation conducted. Mr. Jones prayed that the court take notice that the victim in his prior conviction was actually his wife, which was the basis for reducing the initial charges of rape and kidnapping.
 

 |2On October 23, 2007, the defendant was sentenced a second felony offender under La. R.S. 15:529.1 to twelve years at hard labor without benefit of probation parole or suspension of sentence and imposed a fine of five thousand dollars ($5,000.00). The defendant offered an oral motion to reconsider the sentence which the trial denied. His motion for appeal was granted.
 

 STATEMENT OF FACT
 

 Mark Cunningham testified that he and his family evacuated from New Orleans to Houston prior to Hurricane Katrina. He stated that he returned to the City approximately one month later. He found that his house suffered roof damage and other incidental wind damage. His back door was damaged, likely from being pushed in by the Coast Guard, he believed. He secured the entry by nailing a piece of plywood over the doorway. Mr. Cunningham returned to Houston where his family was residing. Approximately one month later, Mr. Cunningham returned to New Orleans and found that his back door was open but nothing inside had been disturbed. He replaced the plywood over the entry.
 

 In April 2006, Mr. Cunningham received a call from a neighbor informing him that he had seen some men coming out of his house. The next morning, at approximately 3:00 a.m., Mr. Cunningham and wife drove to New Orleans to investigate the situation. Once they arrived in the City, they telephoned the police department and waited under the Claiborne Bridge until the police were in the area. When a police car arrived, the Cunninghams followed it to his residence.
 

 Mr. Cunningham stated that as soon as they pulled up, he observed the defendant holding the iron gate at his front door. The defendant then ran down the front steps of the Cunningham’s home and onto the porch of the house next door where he sat down. Two other subjects were standing on the porch. Eleanor ^Cunningham recalled that the defendant ran from the driveway of the residence out the gate and onto the porch next door.
 

 Both Eleanore and Mark Cunningham noticed that the defendant was wearing clothes that belonged to Mark Cunningham. They approached the defendant and confronted him concerning the clothes he was wearing. The defendant denied that the clothes belonged to Mr. Cunningham. This confrontation resulted in the defendant and Eleanor Cunningham arguing, which required police intervention. Subsequently, the defendant and the two other subjects were handcuffed. It was revealed that the third subject was released by the police after it was determined that he was at the residence after being approached about buying a wall unit from the residence by the other two subjects.
 

 
 *62
 
 Mark Cunningham identified a series of photographs depicting the interior of his residence, which had been ransacked. He stated that his house had not been in that condition on his previous visits. Mr. Cunningham also identified his shirt and shoes that were recovered from the defendant. He also stated that the defendant was wearing his pants. The responding officers related only that Mr. Cunningham identified the shirt and the shoes as being his property.
 

 Officer Juan Lopez testified that on April 3, 2006, he was dispatched to a residence at 1718 Laharpe Street to respond to a report of a residence burglary. He stated that upon arrival, he observed the defendant and another subject, later identified as Herman Richardson, exiting the front door of the residence. Officer Lopez detained the subjects for investigation by placing them in handcuffs. Subsequently, the Cunninghams and Officer Tiwana Conway arrived on the scene.
 

 Officer Conway testified that she was advised by Officer Lopez that he had observed the two subjects exiting the house. She spoke with the Cunninghams Lwho advised her that the two subjects were not authorized to be in their house and that the defendant was wearing Mark Cunningham’s clothes. Officer Conway investigated the condition of the house and found it to be ransacked.
 

 The defendant testified on his own behalf. He stated that on the day in question, he was in the area visiting his cousin when he was approached by Herman Richardson who inquired whether he was interested in purchasing any items that were being removed from the house prior to be being gutted. The defendant stated the he needed some work clothes so he went with Herman Richardson to see what was available. Once at the residence, Herman Richardson went inside and retrieved some things and set them on the side. At the same time, the third subject, David Welch, pulled up in a truck and he and Herman Richardson went inside the house to look at some furniture. The defendant stated that he put the shirt on and tried on the boots, but the pants he was wearing were his own pants. He stated that Herman Richardson had told him that the house belonged to his family or some friends and that he believed him.
 

 The defendant stated that just as Herman Richardson and David Welsh were coming out of the house, the police and the Cunninghams pulled up. He stated that the police immediately detained Herman Richardson and David Welch on the front porch. He stated that he was sitting on the porch next door when the Cunning-hams approached him, and that he was subsequently detained while the police sorted things out.
 

 ERRORS PATENT
 

 A review of the record for errors patent reflects that the trial court erred in imposing that the defendant’s sentence be served without benefit of probation, parole, or suspension of sentence. La. R.S. 14:62.5(B) contains no such ^prohibitions. It appears that the court incorrectly sentenced the defendant pursuant to La. 14:62.5(C), relative to looting during a state of emergency.
 
 [2]
 
 Accordingly the defendant’s sentence is illegal and subject to
 
 *63
 
 amendment on review, as it relates to the requirement that the sentence be served without benefit of parole, probation or suspension of sentence. La.C.Cr.P. art. 882;
 
 State v. Green,
 
 93-1432 (La.App. 4 Cir. 4/17/96), 673 So.2d 262 (reviewing and amending defendant’s sentence for attempted manslaughter to delete the requirement that sentence be served without benefit of parole, probation, or suspension of sentence as an error patent).
 

 ASSIGNMENT OF ERROR
 

 By this assignment, the defendant contends he received an excessive sentence. In
 
 State v. Smith,
 
 2001-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4, the Supreme Court set forth the standard for evaluating a claim of excessive sentence:
 

 Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o
 
 late
 
 shall subject any person to ...
 
 excessive ... punishment.”
 
 (Emphasis added.) Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.
 
 State v. Sepulvado,
 
 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering.
 
 State v. Bonanno,
 
 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion.
 
 State v. Cann,
 
 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.
 
 State v. Walker,
 
 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462;
 
 cf. State v. Phillips,
 
 02-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906.
 

 See also
 
 State v. Johnson,
 
 97-1906 (La.3/4/98), 709 So.2d 672;
 
 State v. Baxley,
 
 94-2982 (La.5/22/95), 656 So.2d 973;
 
 State v. Batiste,
 
 2006-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810;
 
 State v. Landry,
 
 2003-1671 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235.
 

 Generally, the reviewing court must determine whether the trial judge adequately complied with the guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case.
 
 State v. Soco,
 
 441 So.2d 719 (La.1983). If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case.
 
 State v. Egana,
 
 97-0318 (La.App. 4 Cir. 12/3/97), 703 So.2d 223. Where the record clearly shows an adequate factual basis for the sentence, resentencing is unnecessary even when there has not been full compliance with Article 894.1.
 
 Id.
 

 This Court has not yet had occasion to review a defendant’s claim of excessive sentence following a conviction for looting. However, in 2007, the Fifth Circuit Court of Appeal reviewed two cases where the defendants’ sentences where challenged on appeal following a conviction for looting.
 

 In
 
 State v. Pearson,
 
 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, three defendants were arrested for looting a large grocery store after being apprehended inside the store next to shopping cart filled with alcoholic beverages. Neither defendant had any prior convictions. The trial court sentenced each defendant to fifteen years at hard labor. Evidence adduced at trial reflected that the three perpetrators may have had entered the store in an attempt to obtain insulin for a |7relative. Evidence of the defendants’ good charac
 
 *64
 
 ter was also submitted. The appeal court found that the defendants’ maximum sentences were excessive.
 

 In
 
 State v. Carter,
 
 07-270 (La.App. 5 Cir. 12/27/07), 976 So.2d 196 the defendant was convicted of looting merchandise form a large apparel merchant and was sentenced to eighteen years at hard labor. The defendant had previously been convicted of armed robbery for which he was sentenced to seven years. The court found that the defendant’s expressed rationale for looting, the need for clean clothes, was unjustifiable when juxtaposed against the city’s need to maintain law and order. Noting that the defendant received a mi-drange sentence, the appeal court found no abuse of discretion in the trial court’s sentence.
 

 The defendant contends that his sentence is disproportionate to the severity of his offense. He notes that the fact that Cunningham’s had yet to repair the house and had only been boarding it up should have indicated to the judge that the disarray of the house may well have had nothing to do with him. The defendant also notes that this was a case where his explanation of his presence at the house was not implausible. The defendant further states that his previous conviction arose from a misunderstanding with his wife and as such should not have been treated as a serious offense.
 

 The record reflects that the trial court considered the defendant’s previous criminal history and the circumstances of the case in sentencing the defendant to twelve years. The trial court was especially concerned that the case involved the looting of a private residence and that through the defendant’s actions the victims were caused to be victimized twice. “Once at the hands of Hurricane Katrina and once at the hands of Mr. John Jones.” It should also be noted that any rationale relating to providing for his immediate needs was not present here as in
 
 State v.
 

 Carter
 
 or
 
 State v. Pearson,
 
 as the dire conditions exiting in New Orleans had long since passed.
 

 Although the defendant’s explanation of his presence was not implausible, the jury nevertheless found him guilty of the offense. Although the Cunninghams’ house had only been secured by plywood for some time, it appears that it had only recently been ransacked. The Cunning-hams had been alerted to the presence of individuals at the house only the previous day before returning from Houston to investigate. Despite the alleged circumstances of the defendant’s previous conviction, the fact remains that he pled guilty to a serious offense involving the discharge of a firearm. Although the defendant was initially sentenced to three years probation in that case, his probation was revoked and his sentence was made executory.
 

 As a second felony offender the defendant’s sentencing exposure for imprisonment was not less than seven and one-half years and not more than thirty years. La. R.S. 14:62.5(B); La. R.S. 15:529.1(A)(1)(a). The defendant received a habitual offender sentence of twelve years, which as the State notes, is in the lower quarter of the sentencing range for his crime.
 

 The defendant received a sentence six years shorter than the sentence found not constitutionally excessive in
 
 State v. Carter,
 
 which reflects the less serious nature of his previous conviction. For the foregoing reasons, the trial court did not abuse its discretion in sentencing the defendant as it did. The defendant’s claim of excessive sentence is without merit.
 

 CONCLUSION
 

 | (Accordingly, we affirm the conviction, amend the defendant’s sentence to delete the requirement that he serve this sen
 
 *65
 
 tence without benefit of parole, probation, or suspension of sentence, and affirm his sentence as amended.
 

 AFFIRMED AS AMENDED.
 

 [1]
 

 . On May 15, 2007, the State amended the bill of information to include Mark Cunningham as a victim.
 

 [2]
 

 . La. R.S. 14:65.2(0 provides:
 

 Whoever commits the crime of looting during the existence of a state of emergency, which has been declared pursuant to law by the governor or the chief executive officer of any parish, may be fined not less than five thousand dollars nor more than ten thousand dollars and shall be imprisoned at hard labor for not less than three years nor more than fifteen years without benefit of probation, parole, or suspension of sentence.